Charles M. SMITH, a/k/a Charles M. Murphy, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 580S125.

Supreme Court of Indiana.

Jan. 7, 1981.

Bruce S. Cowen, Fort Wayne, for appellant (defendant below).

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee (plaintiff below).

PRENTICE, Justice.

Defendant (Appellant), following a trial by jury, was convicted of Attempted Robbery, a Class A Felony, Ind. Code §§ 35-41-5-1 and 35-42-5-1 (Burns 1979), and was sentenced to imprisonment for a period of thirty (30) years. By this direct appeal, he charges that the trial court erred in five separate instances when it sustained the State's objections to questions asked by defense counsel on cross–examination of State's witnesses. His ultimate contention is that the cumulative effect of such limitations upon cross–examination denied him his constitutional right to a fair trial.

■ Defendant's first assignment is that the trial court erred in refusing the defendant the right to cross examine State's witness, Rennee Holmes, about what she had told an investigating police officer with reference to the appearance of the perpetrator of the crime. However, the briefing requirements of Ind.R.App.P. 8.2(B)(5) and 8.3(A)(7) have not been minimally complied with, in that we have not been referred to the page or pages of the transcript reflecting the proposed questions and exclusionary rulings. Further, we have not been advised as to how the issue and contentions relate to the particular facts of this case. In fact, we have not even been made privy to the particular question or questions that were proposed and excluded. We have nothing more than counsel's assertion that the trial court refused to permit cross–examination upon a particular subject and a quotation from a recent opinion to the general effect that a witness may be cross examined as to statements made that conflict with those made upon direct examination. The issue has not been properly presented and warrants no review or further comment.

■ Defendant's other assignments relate to alleged refusals of the trial court to permit cross–examination of State's witnesses Rennee Holmes and Kevin Kirk in reference to what each had said on prior occasions. By reference to the pages of the transcript of the evidence cited by Defendant, we perceive that in each instance counsel sought to impeach the witnesses by showing that they had made prior inconsistent statements. However, such impeachment has certain requisites. First, a proper foundation must be laid by directing the witnesses' attention to the prior statement by giving the substance of the statement, and by stating the date, place and person to whom it was made. *Gradison v. State et al.*, (1973) 260 Ind. 688, 709, 300 N.E.2d 67, 81. The purpose of the foundation is to give warning to the witness to enable him to prepare to deny the prior statement or to explain it away, if he admits having made it. In general, the courts of this state will accept, "as a proper foundation, any question framed in such a manner as would adequately call the alleged utterance to the attention of the witness sufficiently to enable him to recollect the same, if recallable." *Id.* In the instances concerning which Defendant charges that the court refused to permit cross–examination, counsel had made no attempt to lay a proper foundation.

Two witnesses, Rennee Holmes and Kevin Kirk had observed the robbery attempt, and both had identified the defendant on direct examination. Apparently counsel desired to challenge the consistency of such testimony with prior statements of the witnesses with respect to whether the robber's facial hair was of sufficient quantity to be classified as "sideburns." It also appears that the witness, Holmes, had been previously deposed, that counsel had the deposition in his hands during cross–examination, and that the witness had just explained what she had intended to convey by her prior statement upon the subject. Thereupon counsel asked: "Are you saying that this deposition is incorrect, then?" The court correctly sustained the objection, with the comment that he was doing so because of the phrasing. There was nothing about the witness' prior testimony that indicated she disputed the correctness of the content of the deposition. Further, the court expressly advised counsel, on this occasion, that he could "pursue [his] questioning."

Counsel continued to cross examine the witness with respect to the description of

the robber she had given the investigating officer. Again, counsel apparently wanted to attempt to impeach the witness by using the statements from her deposition. The following colloquy ensued:

> Question: "All right, again, this is deposition of Rennee Holmes—
> Mr. Sims: "Judge, I'm going to object to the form.
> Court: "Objection sustained.
> Question: "Would you read the front cover of this? (presumably presenting the deposition)
> Mr. Sims: "Judge, the same objection.
> Court: "Sustained."

With this, counsel continued to cross examine the witness but abandoned his attempt to impeach her by use of her deposition.

With respect to the witness, Kirk, Defendant asserts in his brief that he was cross examining on the matter of the robber's description, both as given in direct testimony and as previously given to the police and that the court "refused to allow reference to the police report about the matter of facial hair." The cited portion of the record reveals the following:

> "Q. Do you recall whether he had any facial hair or not?
> "A. Yes, I thought he did.
> "Q. You thought he did?
> "A. Yes.
> "Q. Would you say that the police report was inaccurate if it indicated that you had said that there was no facial hair?
> "MR. SIMS: To which, Judge, I'm going to object.
> "COURT: Objection sustained.
> "Q. If Officer—do you recall having a conversation with Officer Manlove, who is sitting here next to the Prosecutor?
> "A. Yes, I do.
> "Q. If he were to get on the stand later on and say that you had said that the person was clean—shaven, would you say that he was lying?
> "A. No, I would—

> "MR. SIMS: To which I will object, Your Honor, again.
> "COURT: Objection sustained."

The questions were hypothetical and premised upon facts not in evidence. They were argumentative and had a potential for misleading the jury, regardless of the answer that might have been forthcoming.

We see nothing unduly restrictive in the court's management of the cross–examination. If there were, in fact, bases for impeachment of the witnesses, the inability to effect them appears to have stemmed from counsel's miscomprehension of the mechanics of such procedure, rather than from any reluctance of the trial court to permit it.

Defendant further charges that the cumulative effect of the curtailment of his cross–examination was to deny him a fair trial. However, we have found no curtailment, hence it follows that this final contention is without merit.

We find no error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.