**Charles Edward GOOLSBY, Appellant,**

**v.**

**STATE of Indiana, Appellee.**

**No. 984 S 356.**

Supreme Court of Indiana.

Dec. 29, 1987.

Sharon Carroll Clark, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PER CURIAM.

Appellant was convicted by a jury of Attempted Murder, Rape, and Burglary, all Class A felonies, and Battery, a Class A misdemeanor. He was sentenced to consecutive terms of thirty-eight (38) years for the attempted murder, fifty (50) years for the rape and one (1) year for the battery. Appellant was sentenced to a concurrent term of fifty (50) years for the burglary.

The facts are: During the evening hours of June 2, 1983, B.R. and her five-year-old son, C.R., had fallen asleep in the living room of their second-story apartment. Appellant gained entry into the apartment through an open attic window, grabbed the sleeping B.R. and repeatedly struck her in the face. C.R. was awakened by the attack and implored appellant to refrain from injuring his mother. Appellant responded by slapping C.R. across the face and ordering him to remain quiet. Appellant then resumed his attack on B.R. She was stabbed with a knife in the chest and neck and struck with a heavy object until she was rendered unconscious. Appellant dragged the unconscious B.R. into the bedroom. When she regained consciousness, B.R., partially dressed, fled the apartment with her son to seek assistance from a neighbor.

Police officers were promptly dispatched to the scene and B.R. was then transported to the hospital for treatment. The officers inspected the residence and observed signs of struggle, an open attic window and a chair located near the attic window which was marred by a footprint.

■ Appellant contends the trial court erred by denying his request to be administered a polygraph examination. Appellant requests this Court to reconsider our view stated in *Robinson v. State* (1974), 262 Ind. 463, 317 N.E.2d 850. In *Robinson,* we held that the results of a polygraph examination, or evidence that defendant offered or refused to take one, are inadmissible in a criminal prosecution absent a waiver or stipulation by the parties. We are still in agreement that polygraph examinations are not scientifically reliable and are inadmissible absent stipulation by both parties. *Hestand v. State* (1986), Ind., 491 N.E.2d 976. There is no error.

Appellant next contends the trial court erred by denying his pretrial motion for a voice lineup. Appellant suggests there was a likelihood of mistaken identification.

■ The granting of a lineup at the defendant's request is largely a matter within the discretion of the trial court. *Smith v. State* (1986), Ind., 490 N.E.2d 748. In the present case, B.R. positively identified appellant from six photographs. There has been no showing that the failure to require a voice lineup prejudiced appellant. We conclude the trial court did not abuse its discretion by denying appellant's motion.

Appellant next contends that there was not sufficient evidence of probative value to sustain his conviction for the crime of burglary. Specifically, appellant argues there was no evidence of a breaking.

This court does not reweigh the evidence nor judge the credibility of witnesses. *Smith v. State* (1985), Ind., 474 N.E.2d 71. To establish "burglary," the State must prove beyond a reasonable doubt that the defendant broke and entered the dwelling of another with the intent to commit a felony. Ind.Code § 35-43-2-1; *St. Mociers v. State* (1984), Ind., 459 N.E.2d 26.

■ A breaking for purposes of burglary is proven by showing that even the slightest force was used to gain unauthorized entry. *Trice v. State* (1986), Ind., 490 N.E.2d 757. Opening an unlocked door, raising an unlocked window or pushing a door which is slightly ajar constitutes "breaking." *Jacobs v. State* (1983), Ind. App., 454 N.E.2d 894.

■ The evidence reveals that on the night of June 2, 1983, B.R. opened an attic window approximately one foot in order to air out the room. Upon being shown a picture of the window, B.R. testified that the window was open wider than she had left it that evening. There is substantial evidence of probative value which would permit the jury to reasonably infer that appellant broke into the victim's house by crawling through the attic window.

Appellant next contends there was not sufficient evidence of probative value on the element of penetration to sustain his conviction for the crime of rape. Rape is defined in Ind.Code § 35–42–4–1 and requires sexual intercourse for a conviction. Sexual intercourse is defined as "an act that includes any penetration of the female sex organ by the male sex organ." Ind. Code § 35–41–1–26.

We find the State presented insufficient evidence of penetration to support a conviction for rape. B.R. was knocked unconscious during the attack. She complained of tenderness in the vaginal area and informed hospital personnel she may have been raped. Dr. Phillip Pinegar, who examined B.R. shortly after the attack, testified her vagina appeared normal and that there were no signs of trauma indicating forcible penetration. He also testified that a small amount of non-motile sperm was discovered. He explained that sperm from the vast majority of males is motile for 1–2 days and that the presence of non-motile sperm either meant the male was abnormal or that sexual intercourse had occurred 2–3 days previously. He also recounted that B.R. told him she had engaged in voluntary sexual intercourse approximately 48 hours prior to the examination.

Consequently, the only evidence of penetration was B.R.'s statement of tenderness in the vaginal area. This is not enough to support a rape conviction. We therefore reverse the judgment of the trial court on this issue; and there being nothing in the record to indicate that the evidential deficiency might be supplied upon a retrial, we direct that appellant be acquitted on the charge of rape.

Appellant contends there was not sufficient evidence of probative value on the element of intent to kill to sustain his conviction for attempted murder. A crime of attempt occurs when one having the state of mind required for a particular substantive offense conducts himself so as to take a substantial step towards the commission of that offense. Ind.Code § 35–41–5–1. The intent to commit murder may be inferred from the deliberate use of a deadly weapon in a manner reasonably likely to cause death. *Spivey v. State* (1982), Ind., 436 N.E.2d 61.

In the present case, appellant stabbed the victim with a knife in the neck and chest and then struck her with a heavy object until she was rendered unconscious. Dr. Pinegar testified that the victim sustained a laceration on her breastbone which was located directly in front of her heart. In addition, Dr. Pinegar commented that the wounds to the neck area were highly critical. If blood vessels in the neck area are punctured, an individual could bleed to death if pressure is not immediately applied. Appellant's use of the knife to stab the victim in the neck and chest established the requisite intent for attempted murder and was therefore sufficient to support the conviction.

Appellant next contends there was not sufficient evidence to establish his identity as the perpetrator of the offense. To support his contention, appellant cites variances in the testimony of the victim and her son. In this case the victim was able to observe appellant's profile in adequate lighting several different times during the attack and quickly identified his photograph from a photographic array. The victim also recognized appellant's voice. Furthermore, both the victim and her son positively identified appellant at the trial. There was sufficient evidence of the identity of appellant as the perpetrator of the offense to support the verdict.

Appellant next contends that the trial court abused its discretion and committed reversible error when it allowed into evidence the testimony of the victim's five-year-old son. Specifically, appellant argues the State failed to prove that C.R. was competent to testify.

Children less than ten years old may testify if it appears that they understand the nature and obligation of an oath. Ind. Code § 34–1–14–5. The determination of a child's competency lies solely within the trial court's discretion since the trial judge has the opportunity to observe the child's intelligence, demeanor and maturity. *Pe-*

*ters v. State* (1984), Ind., 470 N.E.2d 708. This Court has held that a child is competent to testify if the trial court finds the child knows the difference between telling the truth and telling a lie and knows that he or she will be punished for telling a lie. *Lindsey v. State* (1984), Ind., 465 N.E.2d 721. We will not reverse the trial court's decision unless it represents a manifest abuse of discretion. *Stewart v. State* (1982), Ind., 442 N.E.2d 1026.

The record reveals that the trial judge thoroughly questioned C.R. to determine his ability to understand the obligation of an oath and the difference between telling the truth and telling a lie. C.R. testified that he knew the difference between the truth and a lie. He also stated that he knew he might "get a spanking" for not telling the truth. There was sufficient evidence to demonstrate that C.R. understood the nature and obligation of an oath. The trial court did not abuse its discretion by finding C.R. competent to testify.

Appellant next contends the trial court erred by denying his request for a psychiatric evaluation of C.R. prior to the competency hearing. Appellant argues that C.R.'s young age and demeanor on the witness stand should have caused the court enough concern to order an examination. The trial court has wide discretion to determine whether there are reasonable grounds to believe that a witness is incompetent to testify and that decision will be reversed only for an abuse of discretion. *Hurley v. State* (1983), Ind., 446 N.E.2d 1326. Competency requires a factual determination and our review encompasses the facts presented to the trial court and reasonable inferences to be drawn therefrom. *Ray v. State* (1979), 272 Ind. 111, 396 N.E.2d 373. In the present case, there were no reasonable grounds presented to the trial court to indicate incompetency. C.R. had no history of mental illness. Moreover, C.R.'s age and his demeanor on the witness stand concerned only his credibility. The trial court was not required to grant the evaluation and there was no abuse of discretion.

Appellant next contends the trial court erred by restricting the use of C.R.'s deposition during the testimony of Florence Meyer. Specifically, appellant claims the trial court denied him effective confrontation of witnesses and the opportunity to challenge the reliability of C.R.'s testimony.

The record demonstrates that appellant attempted to impeach the testimony of C.R. during the direct examination of defense witness Florence Meyer, a court reporter who had taken C.R.'s deposition. Defense counsel requested that Meyer testify concerning C.R.'s responses to questions elicited during the deposition. The trial court refused to permit the defense to question Meyer regarding appellant's jewelry, the occurrence that awakened C.R. on the night of the incident, the location where C.R. had observed appellant after the incident and how C.R. knew appellant's name.

It is well established that prior inconsistent statements may be used to impeach a witness. *LaBine v. State* (1983), Ind., 447 N.E.2d 592. In order to impeach a witness with a prior inconsistent statement, a proper foundation must be laid to enable the witness to deny or explain the prior statement. *Smith v. State* (1981), 275 Ind. 45, 414 N.E.2d 299.

In the present case, the trial court did not abuse its discretion by restricting the use of C.R.'s deposition. C.R. was not initially questioned regarding appellant's jewelry or how he knew appellant's name. Therefore, a proper foundation for the use of C.R.'s deposition was not laid. Furthermore, the trial court also properly rejected questions pertaining to the occurrence which awakened C.R. and the location where C.R. observed appellant after the incident. C.R.'s in-court responses to questions which were similar to those posed at the deposition were consistent with his prior statements. There is no error.

Appellant next contends the trial court erred by allowing Officer Thomas Brown of the Anderson Police Department to testify regarding the substance of a statement made by C.R. to Brown after the officer arrived at the residence. Officer Brown

testified, over appellant's hearsay objection, that C.R. told him that Charles (appellant) hit him.

Assuming that the statement is hearsay, it was properly allowed as it falls within the excited utterance exception to the hearsay rule.

> "There are two basic requirements that must be established before the exception applies. First, there must be a startling or exciting event that renders reflective thought inoperative. Second, the statement must be the spontaneous result of the event and not the result of reflective thought."

*Corder v. State* (1984), Ind., 467 N.E.2d 409.

In the case before us, B.R. and C.R. were asleep in the living room of their apartment. C.R. awakened to find someone beating and stabbing his mother. When he tried to intervene, he was hit in the face. This is the type of startling event which is contemplated by the exception. As soon as the attacker left, around 2:00 a.m., B.R. and C.R. fled to a neighbor's apartment. An ambulance and police were called. When Officer Brown arrived at 2:45 a.m., the ambulance was already there. Officer Brown observed that C.R. "was very excitable, he was rambling on about what happened." He noted that C.R. had red marks, bruises and blotches on his face and that C.R. had urinated in his pants. The statement that Charles had hit him, 45 minutes after the five year old had been awakened in the middle of the night, seen his mother attacked and been hit himself, has the requisite indicia of reliability that reflective thought did not produce the statement. It was permissible under the excited utterance exception to the hearsay rule.

Appellant next contends the trial court erred by denying him the opportunity to review Officer Thomas Brown's police report during cross-examination of Brown. During cross-examination, Officer Brown testified that he prepared a report after interviewing C.R. and that he read the report prior to trial to refresh his memory. Defense counsel requested the trial court to order Officer Brown to produce a copy of the report. The prosecuting attorney made a timely work product objection. The trial court denied appellant's request and ruled that the report constituted the prosecutor's work product and was therefore not discoverable.

In criminal litigation, we have recognized that protection must be extended to the attorney's work product. *State ex rel. Meyers v. Tippecanoe Superior Court* (1982), Ind., 438 N.E.2d 989. The work product doctrine extends protection to materials prepared by agents of the attorney as well as those prepared by the attorney himself. *United States v. Nobles* (1975), 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141. Police reports, which constitute the work product of the prosecuting attorney, are also afforded protection. *State ex rel. Keaton v. Cir. Ct. of Rush Cty.* (1985), Ind., 475 N.E.2d 1146. There was no error in denying a review of Officer Brown's report.

Appellant next contends the trial court erred by allowing the prosecuting attorney to inform the jury that two principal witnesses knowingly violated the trial court's separation of witnesses order. At trial, the judge was informed that two principal defense witnesses, Anna Goolsby and Monica Lawler, knowingly violated the court's separation of witnesses order by eavesdropping at the courtroom door. Both Goolsby and Lawler were questioned and admonished by the judge.

During direct examination of Anna Goolsby, defense counsel questioned her concerning the separation of witnesses order. On cross-examination, the prosecutor also questioned both Anna Goolsby and Monica Lawler regarding the violation of the order. Appellant failed to object to the challenged testimony at trial. Therefore, the issue is deemed waived. *Yurina v. State* (1985), Ind., 474 N.E.2d 93. Despite the waiver, we will discuss the merits.

The matter of separation of witnesses is wholly within the discretion of the trial court. *Wisehart v. State* (1985), Ind., 484 N.E.2d 949. Even when a clear viola-

tion of the order is demonstrated, the trial court may permit the violating witness to testify at trial. *Steele v. State* (1985), Ind., 475 N.E.2d 1149. However, the conduct of the witness may go to the jury upon the question of his credibility. *Taylor v. State* (1891), 130 Ind. 66, 29 N.E. 415. The trial court's ruling will not be disturbed absent a clear abuse of that discretion. *Clark v. State* (1985), Ind., 480 N.E.2d 555. There has been no showing that the trial court abused its discretion by allowing the two witnesses to testify notwithstanding their violation of the witness separation order.

Appellant next contends the trial court erred by denying his motion for mistrial. The granting of a mistrial lies within the sound discretion of the trial judge. *Ramos v. State* (1982), Ind., 433 N.E.2d 757. If the trial court admonishes the jury to disregard what has occurred at trial or if other curative measures are taken, no reversible error will be found. *Page v. State* (1980), 274 Ind. 264, 410 N.E.2d 1304.

During direct examination, appellant testified that he had a felony conviction for theft. On cross-examination, the prosecutor inquired about the theft conviction and asked appellant whether the conviction was originally charged as robbery. Defense counsel objected and requested a mistrial. After argument on the motion for mistrial, the prosecutor withdrew the question. The trial court then denied the motion for mistrial and instructed the jury to disregard the challenged question.

Appellant has not shown that the trial court's admonition to the jury was an inadequate means of curing any prejudice which may have occurred. Any prejudice which may have been engendered by the prosecutor's question was slight when compared to the evidence against appellant. We do not find that appellant was placed in a position of grave peril to which he should not have been subjected. *White v. State* (1971), 257 Ind. 64, 272 N.E.2d 312. There is no error.

Appellant next contends the trial court erred by permitting evidence of his prior juvenile record. Appellant maintains that a juvenile adjudication is not a criminal conviction and cannot be used at a subsequent criminal proceeding for impeachment purposes. He is correct. This court has long held that juvenile delinquency proceedings are considered civil in nature and consequently cannot be used to impeach a defendant in a criminal proceeding. *Roland v. State* (1986), Ind., 501 N.E.2d 1034; *Perkins v. State* (1985), Ind., 483 N.E.2d 1379; *Hoskins v. State* (1978), 268 Ind. 290, 375 N.E.2d 191.

While it was clearly error for the trial court to allow the State to use appellant's juvenile adjudications for robbery, burglary and theft to impeach him, in this case we find that error to be harmless.

Initially, we note that appellant had a prior adult felony conviction for theft, of which the jury was aware. The adult conviction lessens somewhat the impact of appellant's juvenile record upon the jury. Had appellant's record been clear except for the juvenile matters, then the potential prejudice would be greater. However, since the jury was aware that appellant had committed a felony while an adult, the evidence of the juvenile matters was merely cumulative as far as showing character.

Further, the strength of the State's case supports our determination of harmless error. B.R. and her son, C.R., who were both acquainted with appellant, positively identified appellant as the perpetrator. B.R. also testified she recognized appellant's voice and his distinctive body odor. His very large and bushy afro was also a distinguishing identifying feature.

Hair found at the scene and on B.R. was determined to be "sufficiently similar to ... [appellant's] ... hair to be of common origin." The expert witness who examined the hair testified he could not positively identify the hair as belonging to appellant because in order to do so he would have to examine and exclude the hair of everyone in the world because it is possible, but not probable, that someone could have hair with identical characteristics to those found in the unidentified hair and appellant's hair sample.

Police also discovered a footprint on a chair underneath the window through which access was gained. The footprint was made by the same brand of shoes as those appellant was wearing when he was arrested. Appellant, in addition, had fresh scratch marks on his face and finger.

Another factor playing a role in our harmless error determination is the jury's acquittal of appellant on the charge of robbery which was also brought in this case. Two of the challenged juvenile adjudications were for robbery. It seems unlikely that had the jury improperly placed weight on the juvenile charges in its deliberations, that it would acquit appellant of the robbery charged in this case.

Finally, the prosecutor did not exploit or even mention the juvenile adjudications in final argument. For this and all of the aforementioned reasons, we find that the introduction of appellant's juvenile record, while error, was harmless.

Appellant next contends the trial court erred by limiting the testimony of defense witness Lardy Alexander. During the direct examination of Alexander, defense counsel attempted to elicit testimony concerning the victim's past sexual conduct, use of drugs, association with black men, and relationship with her former husband, John Shelton. The trial court sustained the prosecutor's objections.

Indiana's rape shield statute protects victims of sex crimes from a general inquiry into their past sexual conduct. Ind. Code § 35–37–4–4; *Thomas v. State* (1984), Ind., 471 N.E.2d 681. We conclude the trial court properly excluded Alexander's testimony concerning the victim's past sexual conduct.

In criminal proceedings, the trial court has wide discretion in ruling on the relevance of evidence. *Denton v. State* (1986), Ind., 496 N.E.2d 576. Evidence is relevant if it has a tendency to prove or disprove a material fact. *Id.* We conclude the trial court properly excluded Alexander's testimony concerning the victim's alleged drug usage, her association with black men, and her relationship with her former husband as irrelevant to the question of appellant's guilt. There is no error.

Appellant next claims the trial court erred by refusing to give his Tendered Final Instruction No. 4 concerning reasonable doubt. The trial court gave its own instruction concerning reasonable doubt which fully explained the concept. The subject was well covered by the trial court. Therefore, there was no error in the denial of a tendered instruction on that subject.

Appellant next claims the trial court erred by refusing to give his Tendered Final Instruction No. 8, which reads as follows:

> "Criminal Recklessness is a lesser included offense of attempted murder and rape."

In *Humes v. State* (1981), Ind., 426 N.E.2d 379, we addressed this issue:

> Since we have clearly held that our attempt statute can have application only to specific intent crimes, and there is no element of specific intent in the offense of recklessness, we hold that the offense of recklessness is not a lesser included offense of the crime of attempted murder and, further, that there can be no crime of "attempted recklessness."

The trial court properly refused this instruction in relation to attempted murder. It is not necessary to address the propriety of the instruction with respect to the rape conviction as that conviction has been vacated.

Appellant next claims the trial court erred by refusing to give his Tendered Final Instruction No. 12, which reads as follows.

> "Where evidence necessary for a conviction is wholly circumstantial in character, it must be of conclusive and probative force that it tends to point surely and unerringly to guilt of the accused to the extent that it excludes every reasonable hypothesis of innocence."

Where there is direct evidence sufficient to convict, any instruction on circumstantial evidence may be refused. *Brendel v. State* (1984), Ind., 460 N.E.2d 919. In the present case, the victim identi-

fied appellant in a photographic array and at trial. Therefore, the instruction on circumstantial evidence was properly refused.

Appellant next contends the trial court abused its discretion by ordering that his sentences be served consecutively. The trial court has broad discretion to determine whether terms of imprisonment shall be served concurrently or consecutively. *Haggard v. State* (1983), Ind., 445 N.E.2d 969. When the trial court uses its discretionary power to increase or decrease the basic sentence or impose consecutive terms of imprisonment, it must set forth particularized findings supporting any aggravating or mitigating circumstances. *Douglas v. State* (1984), Ind., 464 N.E.2d 318.

The sentences imposed in the instant case are not manifestly unreasonable. The record reveals the judge made adequate and particularized findings to support the sentences. The trial judge found that appellant expressed no remorse for his offenses and had an extensive record of juvenile and adult offenses. He further found that a reduced sentence would depreciate the seriousness of the offenses in that they were particularly vicious, brutal and unfeeling. We conclude that the trial court did not abuse its discretion by ordering the sentences to be served consecutively.

Finally, appellant contends that the sentences imposed constitute cruel and unusual punishment. We do not find that the punishment is so excessive as to be violative of the provisions under the Eighth and Fourteenth Amendments. A fifty (50) year sentence for burglary, to run concurrently with a thirty-eight (38) year attempted murder sentence and a one (1) year battery sentence, is neither atrocious nor excessive punishment in relation to the crimes committed.

Appellant is ordered acquitted on the charge of rape. In all other things the trial court is affirmed.

GIVAN, J., dissenting in part and concurring in part with opinion in which PIVARNIK, J., concurs.

GIVAN, Justice, dissenting in part and concurring in part

I respectfully dissent from the majority opinion on the issue of the sufficiency of the evidence to establish rape. The jury was entitled to examine the entire evidence in this case to make that determination.

The appellant had gained forceful entry into the home of the victim and had attacked her by repeatedly striking her in the face, stabbing her with a knife and striking her with a heavy object until she was rendered unconscious. He then dragged her into the bedroom. The victim was of course unable to testify that she had direct knowledge of penetration, although she stated to hospital personnel that she suspected penetration. The examining doctor stated that she did have a degree of vaginal tenderness. Whether there was or was not motile sperm in the victim's vagina is of little moment. Of course the presence of motile sperm would indicate recent sexual intercourse. However, the absence of motile sperm does not determine the question of penetration.

The statute defining rape does not require ejaculation. It states that penetration is sufficient. This Court has consistently held for many years that proof of the slightest degree of penetration is sufficient. *Thomas v. State* (1984), Ind., 471 N.E.2d 681. Under the circumstances of this case, I would hold that there is sufficient circumstantial evidence to support the finding of the jury that penetration had in fact occurred.

I concur with the majority in all other aspects of this case.

PIVARNIK, J., concurs.