

FILED

Aug 19 2019, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lisiate Tavake,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 19, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2561<br><br>Appeal from the Montgomery<br>Circuit Court<br><br>The Honorable Harry A. Siamas,<br>Judge<br><br>Trial Court Cause No.<br>54C01-1802-F4-238 |

**Mathias, Judge.**

[1]     Following a jury trial in Montgomery Circuit Court, Lisiate Tavake ("Tavake") was convicted of Level 4 felony unlawful possession of a firearm by a serious violent felon and sentenced to eight years of incarceration. Tavake appeals and presents four issues, which we consolidate and restate as the following three:

I. Whether the trial court erred in concluding that Tavake's conviction in California for robbery is substantially similar to the crime of robbery in Indiana;

II. Whether the trial court abused its discretion when it denied Tavake's request to prevent the lead investigating officer from testifying after he sat at the prosecuting attorney's table during the trial even after the court granted Tavake's motion for separation of witnesses;

III. Whether the trial court abused its discretion by admitting into evidence Tavake's booking records from the local jail and correctional records from California.

We affirm.

## Facts and Procedural History

On the night of January 30, 2018, Montgomery County emergency dispatch received a 911 call from a man who stated that someone might be shooting a firearm in his apartment complex. Officers from the Crawfordsville Police Department went to the apartment complex, knocked on the door of the apartment mentioned in the call, and spoke with the occupant thereof. The officers detected no smell of gunpowder, and they did not see any shell casings that would indicate that a firearm had recently been discharged. The occupant permitted the officers to enter his apartment to investigate. When they discovered no indications of the use of a firearm, they determined that someone had most likely called in a false report.

The officers then gathered in the lobby of the apartment complex. As they did so, Tavake cracked open the door to his apartment and stared at the officers.

One of the officers asked Tavake if everything was okay, and Tavake gave a short answer indicating that he was fine. When the officers left the apartment building, Tavake followed them and spoke with them from the top of the stairs that led from the street to the front door of the building. An unusual conversation then took place.

[5] Tavake asked the officers if they were looking to arrest someone. The officers indicated that they were not. Tavake then informed the officers that he had an active arrest warrant based on a parole violation in California. Tavake told the officers that he was on parole for a robbery conviction. Tavake gave the police an Indiana learner's permit, and one of the officers ran his information through the police computer system. However, no arrest warrant appeared in their system. Tavake insisted that he needed to be extradited to California, and one of the officers informed him that such a decision was up to the authorities in California, who had apparently not entered a warrant for Tavake's arrest in the interstate database. Another officer informed Tavake that he should speak with his parole officer in California.

[6] Still apparently unsatisfied with these answers, Tavake asked the officers what would happen if he committed a crime in Indiana. The police informed him that this would only guarantee that he would get in trouble in Indiana and that California still might not choose to extradite him. Tavake joked that he had never had so much trouble trying to get arrested. He then told the officers that he had two handguns in his apartment that he was not supposed to have due to his robbery conviction. The officers informed him that he would need to be

handcuffed and that they would need to search his apartment for the weapons. Tavake readily agreed. The officers placed Tavake in custody and read him his *Miranda* rights.

[7] The police searched Tavake's apartment and found two handguns: a Glock 9 mm pistol and a Taurus .40 caliber pistol. Both weapons were, as Tavake indicated, loaded and had a bullet in the chamber. The police then confirmed that Tavake had been convicted of second-degree robbery in California on June 20, 2009.

[8] On February 1, 2018, the State charged Tavake with Level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF") and Class A misdemeanor false informing. The State subsequently amended the information to specify the offense underlying the SVF charge. A two-day jury trial commenced on September 25, 2018. After both sides made their opening statements, Tavake made a motion for separation of the witnesses. The trial court granted Tavake's motion. The court told counsel for both parties to advise their witnesses of the separation order and then adjourned for lunch.

[9] When the trial resumed, Officer Cade Mills ("Officer Mills"), one of the responding officers, sat at the prosecutor's table. The State, however, did not formally designate Officer Mills as its assisting witness. Still, Tavake did not object to Officer Mills's presence at the prosecutor's table, even though Officer Mills was listed on the State's witness list. Tavake also did not object as the State called its first two witnesses. When the State called Officer Mills to testify,

however, Tavake objected, noting the separation-of-witnesses order and that the State had failed to designate Officer Mills as its assisting witness. Tavake requested that Officer Mills be excluded from testifying. The prosecuting attorney acknowledged his failure but argued that Officer Mills should not be prevented from testifying. The trial court ruled as follows:

> The record will show that Officer Mills has been in the courtroom sitting next to Prosecuting Attorney Buser throughout this case from the time evidence was begun. The court is going to overrule the motion. I understand why it's made, but I think it was pretty evident, it was evident to the court and should have been evident to the defense that the state intended to have Officer Mills as its designated witness. If Officer Mills were sitting in the back and not sitting at counsel table then I probably would grant the motion, but it appears to the court that it was evident that the state intended him to be their designated witness. So I don't see how the defense is harmed or prejudiced by Officer Mills['s] presence and his subsequent testimony since the state did have the right to designate one witness to remain in the courtroom to assist the state. So your objection is noted and overruled.

Tr. pp. 121–22.

[10]     Tavake also objected when the prosecuting attorney tendered as evidence, as State's Exhibit 11, a copy of Tavake's booking records from the Montgomery County Jail. Tavake based his objection on grounds that the booking records had not been listed on the State's pre-trial exhibits list. Tavake's counsel stated that he had received the booking records approximately one week before the trial began. The prosecuting attorney acknowledged this but informed the trial court that he himself had only received the records from the jail the week before

trial and immediately provided a copy to defense counsel. The prosecuting attorney also stated that he had telephoned defense counsel about this addition to the State's exhibits list. The trial court overruled Tavake's objection, stating, "it appears that the information was submitted to defense as soon as the State received it." Tr. p. 147.

[11] Tavake additionally objected when the prosecuting attorney proffered State's Exhibit 9, which consisted of certified copies of Tavake's correctional records from California, including the abstract of judgment from his robbery conviction, a booking photograph, an FBI card, and copies of his fingerprints. Tavake specifically objected to pages three, four, and five of these records. Page five listed other crimes Tavake had been convicted of (receiving stolen property and participation in a criminal street gang), and pages three and four listed Tavake's "external movements." Tr. p. 154. The State agreed to remove pages three and four from the records and agreed to redact the portions of the other pages referring to Tavake's other convictions. The trial court agreed to the removal of pages three and four and ordered that the remaining pages be redacted. Tavake then further objected to a reference to the enhancement of his robbery conviction, which the trial court also ordered to be redacted. Lastly, Tavake asked that the court redact from the records a reference to "186.22 (B)(1) PC," which was listed on the FBI record. *Id.* at 156–57. Tavake argued that this reference would confuse the jury, but the trial court disagreed and admitted the otherwise-redacted copy of the records into evidence.

[12] At the conclusion of the trial, the jury found Tavake guilty of Level 4 felony unlawful possession of a firearm by an SVF, but not guilty of Class A misdemeanor false informing. On October 24, 2018, the trial court sentenced Tavake to eight years of incarceration. Tavake now appeals.

### I. The California Crime of Robbery is Substantially Similar to the Crime of Robbery in Indiana

[13] Tavake first argues that the trial court erred by determining that his conviction in California for robbery counts as a conviction for a crime that is substantially similar to the crime of robbery in Indiana, thereby qualifying him as an SVF.[1]

#### A. The SVF Statute

[14] "A serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony." Ind. Code § 35-47-4-5(c). A "serious violent felon" is defined as "a person who has been convicted of:

> (1) committing a serious violent felony in:
>
> > (A) Indiana; or
> >
> > (B) any other jurisdiction in which the elements of the crime for which the conviction was entered are substantially similar to the elements of a serious violent felony[.]

---

[1] Tavake also faults the trial court for not stating its reasoning on the record. However, he cites to no authority to support his claim, and we are aware of none. Moreover, we independently determine *infra* that the crime of robbery as defined in California is substantially similar to the Indiana crime of robbery. Thus, any error on the part of the trial court to state its reasoning is harmless.

*Id.* at § 5(a)(1). A "serious violent felony" is defined to include robbery. *Id.* at § 5(b)(13).

[15] Thus, to convict Tavake of unlawful possession of a firearm by an SVF, the State was required to prove that he knowingly or intentionally possessed a firearm[2] and that he had been convicted of robbery in another jurisdiction where the elements of that crime are substantially similar to the elements of robbery in Indiana.

## B. Standard of Review

[16] As this court explained in *Hollingsworth v. State*:

> The Uniform Judicial Notice of Foreign Law Act provides that questions of foreign law "shall be made by the court and not by the jury." Ind. Code § 34-38-4-3. In *Mann*, we found that Indiana Code Section 34-38-4-3 required that the trial court take judicial notice of Ohio's operating while intoxicated statute and rule as a matter of law that it was substantially similar to Indiana's operating while intoxicated statute. "[T]he determination of foreign law is a question of law for the court," and the issue of whether the statutes were substantially similar should not [be] put to the jury.

---

[2] Tavake makes no claim regarding the sufficiency of the evidence proving that he was in possession of firearms.

907 N.E.2d 1026, 1030 (Ind. Ct. App. 2009) (quoting *Mann v. State,* 754 N.E.2d 544, 549 (Ind. Ct. App. 2001), *trans. denied*). We review questions of law de novo.[3] *Id.*

[17] Our supreme court has held that the elements of two crimes are "substantially similar" "if they have common core characteristics that are largely, but not identically, alike in degree or extent." *State v. Hancock*, 65 N.E.3d 585, 587 (Ind. 2016); *see also Berberena v. State*, 86 N.E.3d 199, 202 (Ind. Ct. App. 2017) (citing *Hancock*), *trans. denied*. "[E]lements may be considered substantially similar with respect to specific characteristics such as the underlying conduct sought to be regulated." *Hancock*, 65 N.E.3d at 587. But "an out-of-state statute is not substantially similar to an Indiana statute where the out-of-state statute is broader than the Indiana statute." *Id.* at 589. To determine whether an out-of-state statute is substantially similar to an Indiana statute, the reviewing court should "set out the relevant text of each offense, separate the offenses into elements conducive to comparison, and then look for substantial similarity between the elements." *Id.* at 587.

---

[3] Tavake briefly argues that, since his status as an SVF is an element, "at the very least the jury should have been instructed that the judicial notice taken by the trial court was not conclusive." Appellant's Br. at 25 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)). Tavake does not further develop this argument, and we therefore consider it waived. *See Chappell v. State*, 966 N.E.2d 124, 132 n.7 (Ind. Ct. App. 2012) (noting that the failure to develop a cogent argument results in waiver of the issue on appeal), *trans. denied* (citing Ind. Appellate Rule 46(A)(8)(a)). Wavier notwithstanding, the question of whether a statute is substantially similar to an out-of-state statute is, as stated, a question of law for the trial court to determine and reviewable by this court de novo. *Hollingsworth*, 907 N.E.2d at 1030. It was for the jury to determine whether the State had proved that Tavake had, in fact, previously been convicted of robbery; it was not for the jury to determine whether the two crimes are substantially similar, which is a question of law.

*C. The California Robbery Statute*

[18] The California Penal Code defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. The "fear" mentioned in this section is further defined as:

> 1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or,
>
> 2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery.

Cal. Penal Code § 212.

[19] The California Supreme Court has explained that:

> Robbery is "the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property." A conviction of robbery requires evidence showing that the defendant conceived the intent to steal either before or during the commission of the act of force against the victim.

*People v. Jackson*, 376 P.3d 528, 583 (Cal. 2016) (quoting *People v. Marshall*, 931 P.2d 262, 279–80 (Cal. 1997)); *see also People v. Mora and Rangel*, 420 P.3d 902, 936 (Cal. 2018), *as modified on denial of reh'g* ("Robbery requires the 'specific intent to permanently deprive' the victim of his or her property.") (quoting *People v. Young,* 105 P.3d 487, 502–03 (Cal. 2005)).

## D. *The Indiana Robbery Statute*

[20] In Indiana, robbery is defined as:

> knowingly or intentionally tak[ing] property from another person
> or from the presence of another person:
>
> > (1) by using or threatening the use of force on any person; or
> >
> > (2) by putting any person in fear[.]

Ind. Code § 35-42-5-1(a).

## E. *Comparison of the Elements of the Crimes*

[21] Comparing the elements of these two crimes, we find them to be substantially similar. First, both require that the act in question be done with a high mens rea—intentionally in California, and knowingly or intentionally in Indiana. That this mens rea requirement is not spelled out in the statutory text itself is not fatal, as it has been required by judicial interpretation. *See Hancock*, 65 N.E.3d at 590 (referring to Ohio judicial interpretation of that state's burglary statute when determining whether Ohio's second-degree burglary statute was substantially similar to Indiana's Level 4 felony burglary statute). If anything, the inclusion of an intentional mens rea as one of the elements of the California crime of robbery makes the elements of that crime more stringent than the Indiana crime, as any act carried out with the intent required for the California crime would necessarily meet the mens rea requirement of the Indiana crime.

*See id.* at 592 (holding that crime of second degree burglary as defined in Ohio was substantially similar to crime of Level 4 felony burglary in Indiana even though the elements of the crime in Ohio required the actual or likely presence of a person in the structure because the very same conduct meeting the elements of the crime would necessarily satisfy the elements of the Indiana crime).

[22] Next, the elements of both crimes require the taking of "property" from another person or from the presence of another person. Although the California statute uses the term "personal property" and Indiana uses "property," we think this to be a distinction without a difference. The property taken during a robbery must by necessity be personal, rather than real, property.

[23] Tavake claims that the California crime is not substantially similar because it requires a "felonious taking" of property, whereas the Indiana crime simply requires a "taking." He does not, however, explain why this distinguishes the two crimes. Again, if anything, this would appear to make the California elements more stringent. More importantly, the California Supreme Court has interpreted this "felonious taking" requirement to be "synonymous with larceny." *People v. Williams*, 305 P.3d 1241, 1247 (Cal. 2013). Larceny requires "asportation," which is "a carrying away of stolen property." *Id.* The Indiana Supreme Court has similarly held that asportation is an element of the crime of

robbery. *Hunter v. State*, 492 N.E.2d 1067, 1071 (Ind. 1986).[4] Thus, the "taking" elements of both crimes are substantially similar.

[24] The California statute also requires that the taking be from the victim's "person or immediate presence." Cal. Penal Code § 211. Indiana's robbery statute similarly requires the taking to be "from another person or from the presence of another person." Ind. Code § 35-42-5-1(a). We consider these requirements to be substantially similar, as proof of "immediate" presence would necessarily establish presence, immediate or not.

[25] The California statute also requires that the taking be accomplished by "force or fear," and the Indiana statute requires the taking to be accomplished "by using or threatening the use of force on any person" or "by putting any person in fear." Again, these elements are substantially similar.

[26] Having compared the elements of the crime of robbery in California with the elements of the crime of robbery in Indiana, we conclude that they have common core characteristics that are largely, even though not identically, alike in degree and extent. *See Hancock*, 65 N.E.3d at 587. Both require the taking of property from the presence of another person accomplished by the use of force or fear. We therefore conclude that the trial court did not err by concluding that the crime of robbery in California is substantially similar to the same crime in

---

[4] "Transportation of the property a short distance" is sufficient to meet the requirement of asportation. *Chanley v. State*, 583 N.E.2d 126, 130 (Ind. 1991).

Indiana. Thus, Tavake's conviction for robbery in California qualifies him as an SVF.[5]

## II. Violation of Separation-of-Witnesses Order

Tavake next argues that the trial court abused its discretion by permitting Officer Mills to testify even though the trial court granted Tavake's motion for separation of the witnesses and the State failed to designate Officer Mills as its assisting witness. Indiana Evidence Rule 615, which governs the separation of witnesses, provides:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
>
> (a) a party who is a natural person;
>
> (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; or
>
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense.

"The matter of separation of witnesses is wholly within the discretion of the trial court," and "[e]ven when a clear violation of the order is demonstrated, the trial court may permit the violating witness to testify at trial." *Goolsby v. State*,

---

[5] Tavake also claims that the trial court erred by permitting the State to establish his prior conviction by admission of his California correctional records, arguing that the records constituted hearsay and were not properly authenticated. We address these issues *infra* along with Tavake's other challenges to the admission of these records.

517 N.E.2d 54, 60–61 (Ind. 1987). We review a trial court's ruling on a request to exclude a witness due to a violation of a separation-of-witnesses order for an abuse of discretion. *Jiosa v. State*, 755 N.E.2d 605, 607 (Ind. 2001) (citing *Goolsby*, 517 N.E.2d at 61).

[29]     As set forth above in the Statement of Facts, the trial court granted Tavake's motion for separation of the witnesses, then recessed. When the trial resumed, Officer Mills sat at the prosecutor's table as the State presented its first few witnesses. When the State called Officer Mills as a witness, Tavake objected and moved to exclude Officer Mills's testimony due to the State's violation of the trial court's separation-of-witnesses order. The trial court overruled Tavake's objection and denied his motion to exclude, noting that Officer Mills had been sitting at the prosecutor's table as if an assisting witness even though the prosecutor failed to designate him as such.

[30]     Under these facts and circumstances, we cannot say that the trial court abused its discretion by permitting Officer Mills to testify. Officer Mills was included on the State's witness list and sat at the prosecutor's table as if a designated assisting witness. Yet Tavake did not object until Officer Mills was called to testify. As noted by the trial court, there appears to have been no subterfuge on the part of either Officer Mills or the prosecuting attorney. Instead, the prosecuting attorney admitted that he simply forgot to designate Officer Mills as his assisting witness.

Moreover, Tavake makes no claim that Officer Mills could not have properly been designated as an assisting witness. To the contrary, it is clear that Officer Mills qualified as an assisting witness under Evidence Rule 615(b). He was an officer of the State, a party that is not a natural person, and he was one of the responding officers. *See Fourthman v. State*, 658 N.E.2d 88, 91 (Ind. Ct. App. 1995) (holding that trial court properly permitted conservation officer to act as assisting witness because he was an officer of a state agency and was one of the primary investigating officers), *trans. denied*. Thus, had the State simply designated him as an assisting witness, there is no question that Officer Mills could have properly testified despite sitting at the prosecutor's table. Accordingly, the trial court did not abuse its discretion by permitting Officer Mills to testify.

### III. Admission of Evidence

The final two issues Tavake presents on appeal both involve a claim of error by the trial court in the admission of certain documents proffered by the State.

> Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. Accordingly, we review the court's decision on appeal only for an abuse of that discretion. The trial court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law.

*Harrison v. State*, 32 N.E.3d 240, 250 (Ind. Ct. App. 2015) (citations omitted), *trans. denied*.

*A. Booking Records from County Jail*

[33] Tavake argues that the trial court erred in admitting State's Exhibit 11, which consisted of Tavake's booking records from the Montgomery County Jail, because the State did not include this in its pre-trial discovery. Trial courts have broad latitude with respect to discovery matters, and their rulings receive great deference by the court on appeal. *Cain v. State*, 955 N.E.2d 714, 718 (Ind. 2011). "The primary factors that a trial court should consider when addressing a discovery violation are 'whether the breach was intentional or in bad faith and whether substantial prejudice has resulted.'" *Id.* (quoting *Wiseheart v. State*, 491 N.E.2d 985, 988 (Ind. 1986)). We will affirm the trial court's rulings absent clear error and resulting prejudice. *Id.*

[34] Excluding evidence due to a discovery violation is not preferred and is only appropriate if the defendant shows "that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial." *Warren v. State*, 725 N.E.2d 828, 832 (Ind. 2000). The preferred remedy for a discovery violation is instead a continuance. *Id.* Accordingly, the failure to alternatively request a continuance upon moving to exclude evidence, where a continuance would be an appropriate remedy, constitutes a waiver of any alleged error pertaining to noncompliance with the court's discovery order. *Id.* Here, a continuance would have remedied any prejudice from the State's late disclosure of this material, but Tavake did not move for a continuance as an alternative to exclusion. Thus, the issue is waived. *See id.*

[35] Even if we addressed Tavake's argument on the merits, he would not prevail. There is no indication that the State's relatively late disclosure of the booking records was intentional. *See Wheeler v. State*, 95 N.E.3d 149, 159 (Ind. Ct. App. 2018) (noting that exclusion of evidence is generally inappropriate where the discovery violation is not deliberate). Nor is there any indication that the records constituted a surprise to Tavake, as he was well aware that he had been booked at the Montgomery County Jail. Further, the prosecuting attorney noted that he had received the booking records from the jail the week before the trial and immediately informed defense counsel by telephone and provided the defense with copies of the records. Tavake's counsel confirmed that the prosecuting attorney had provided him with the records the week prior to trial. *See Cain*, 955 N.E.2d at 719 (noting that there is no error if the prosecuting attorney provides the defense with requested evidence as soon as the prosecuting attorney is in possession thereof); *Wheeler*, 95 N.E.3d at 159 (holding that trial court did not abuse its discretion in admitting belatedly disclosed testing results of defendant's blood sample where there was no indication that the delay was deliberate and the prosecuting attorney disclosed the results almost immediately after receiving them). Tavake does not explain how the time he was provided was inadequate to investigate the records, nor does he state what he would have done differently had the records been disclosed to him earlier. We therefore conclude that the trial court did not abuse its discretion by admitting Tavake's jail booking records into evidence.

## B. *Tavake's California Correctional Records*

[36] Lastly, Tavake argues that the trial court abused its discretion by admitting into evidence, as State's Exhibit 9, his correctional records from the California Department of Corrections and Rehabilitation. Tavake first argues that his California correctional records constituted inadmissible hearsay. As noted by the State, however, Tavake never lodged a hearsay objection to the admission of these records before the trial court. He therefore failed to preserve for appeal any argument that the records constituted hearsay. *See Casady v. State*, 934 N.E.2d 1181, 1191 (Ind. Ct. App. 2010) ("A party may not object to the admission of evidence on one ground at trial and seek reversal on appeal based on a different ground.") (citing *Malone v. State*, 700 N.E.2d 780, 784 (Ind. 1998)), *trans. denied*. The same is true for Tavake's one-sentence argument that the records were not properly certified, as Tavake made no objection on these grounds at trial.[6]

[37] Tavake also claims that the trial court erred by admitting State's Exhibit 9 because it contained references to his other prior criminal history. Tavake acknowledges that the trial court redacted or removed the explicit references to his other prior criminal history. He argues, however, that the trial court should also have redacted the reference to "186.22(B)(1) PC," which was listed on the FBI card included in State's Exhibit 9. *See* Ex. Vol., State's Ex. 9, p. 4. Tavake

---

[6] Tavake makes no argument that the admission of his correctional records was fundamental error, and we are not inclined to make such an argument for him.

notes that this does not appear to refer to his prior conviction for robbery, which, as noted above, was based on section 211 of the California Penal Code. He therefore claims that the inclusion of this material was irrelevant and prejudicial.

[38]    While we agree with Tavake that this information appears to be irrelevant, we fail to see how he was prejudiced by the inclusion of this cryptic reference. Indeed, without resorting to legal research, "186.22(B)(1)" has little intrinsic meaning. Using the resources at our disposal, we may presume that this is a reference to California Penal Code section 186.22, which criminalizes participation in a criminal street gang. But there is no suggestion that the jury had the resources to decipher this citation, and the FBI card contained no indication that it referred to an additional criminal conviction.

[39]    We therefore conclude that, even though irrelevant, the inclusion of this information did not result in any perceivable prejudice to Tavake. *See* Ind. Evidence Rule 103(a) noting that party may not claim error in an evidentiary ruling unless the error affects a substantial right of the party; *Rogers v. State*, 897 N.E.2d 955, 961 (Ind. Ct. App. 2008) (noting that any error in the admission of evidence is to be disregarded as harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties), *trans. denied*.

# Conclusion

[40]    The trial court did not err by concluding, as a matter of law, that Tavake's conviction for robbery in California was a conviction for a crime substantially

similar to the crime of robbery in Indiana, which is a serious violent felony. Because Tavake's California conviction is a serious violent felony, and because the State provided sufficient evidence to establish the fact of Tavake's prior conviction for this violent felony and his possession of handguns, his conviction for unlawful possession of a handgun by an SVF stands. Further, the trial court did not abuse its discretion by failing to exclude Officer Mills from testifying despite the violation of the separation-of-witnesses order. Officer Mills clearly qualified as an assisting witness that would have been excluded from such an order, but the State simply forgot to officially designate him as such. Lastly, the trial court did not abuse its discretion in the admission of State's Exhibits 9 and 11. Tavake's hearsay and authentication arguments are waived.

[41] Tavake's argument that the trial court should have excluded Exhibit 11 because it was not timely disclosed is also waived, as Tavake failed to move for a continuance. Waiver notwithstanding, Tavake received the booking records the week before trial, there is no indication that the delay in securing these records was deliberate, and the State disclosed them to Tavake almost immediately after receiving them. Lastly, Tavake has not shown how he was prejudiced by the inclusion of the cryptic reference to "186.22(B)(1)" in his correctional records. Accordingly, we affirm the judgment of the trial court.

[42] Affirmed.

May, J., and Brown, J., concur.