**Calvin LINDSEY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 284S69.**

Supreme Court of Indiana.

July 19, 1984.

Michael W. Back, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Phillip B. Rarick, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Calvin Lindsey was convicted after a bench trial in the Lake Superior Court of class B felony confinement and class A felony attempted child molesting. The trial court subsequently sentenced Appellant to concurrent impris-onment terms of ten years for confinement and thirty years for attempted child molesting. Appellant now directly appeals and raises the following three issues:

1. sufficiency of the evidence;

2. admissibility of Appellant's statement to police; and

3. competency of the victim to testify.

At approximately 5:30 p.m. on November 7, 1982, four-year-old K.B. was playing with her five-year-old brother, C.B., on the front porch of their home in Hammond. K.B. and C.B. both testified that Appellant, a stranger, approached them while they were playing and took them away. Edward Podkul, a neighbor, testified that he observed Appellant walking with K.B. and C.B. in the alley behind his house. Mr. Podkul attempted to follow the children when he heard K.B. crying but Appellant "jumped" towards him and made a threatening gesture. Podkul testified that Appellant had his hand in his pocket as if he had a gun. Podkul also testified that he asked Appellant what he was doing and was told that it was "none of my g_____ business." Appellant picked up the children and walked away with them.

K.B. and C.B. testified that Appellant took them to "Mikey's" garage where he pulled up K.B.'s dress, pulled down her panties, pulled down his pants and underwear and got on top of her. C.B. said K.B. was crying. He also said that he told Appellant "Get off, get off, get off" causing Appellant to reply "Be quiet, I have a gun." K.B. testified that Appellant had a gun in his pocket which he took out while in the garage. C.B. testified that Appellant told him that he had a gun. The mother of the children, S.B., testified that she immediately went searching for her children when she discovered them missing from their play area. While near Mikey's garage, she heard K.B. scream "Stop" and C.B. scream "Leave her alone." After S.B. found the garage door locked and started beating upon it, the garage door opened and both K.B. and C.B. came out crying hysterically. K.B. was holding her panties.

S.B. further testified that she saw Appellant crawl through the garage doorway and start to run away. Daniel Seratin, a Hammond Police Officer, testified that he arrived at Mikey's garage in time to observe S.B. chasing Appellant. He also stated that K.B. told him shortly after the attack that a black man removed her panties and tried to stick "his thing" in her. Seratin observed that Appellant did not appear to be intoxicated or "high" on drugs when arrested at the scene. Dr. Jeffrey Yessenow testified that he examined K.B. on November 7, 1982, and observed abrasions on her face, back, legs and in her rectal area. He also found lacerations on her right and left labia majora.

I

Appellant first asserts that the evidence does not support his convictions for class B criminal confinement, Ind.Code § 35–42–3–3 (Burns Supp.1984), and class A attempted child molesting, Ind.Code §§ 35–42–4–3 (Burns Supp.1984) and 35–41–5–1 (Burns 1979). Appellant specifically argues that there was insufficient evidence to support the trial court's finding that he was armed with a deadly weapon during the commission of these crimes. Our standard of review for sufficiency questions is the same in all cases. This Court will consider only the evidence most favorable to the State with all logical inferences drawn therefrom. *Harris v. State*, (1981) Ind., 425 N.E.2d 112. Moreover, this Court will not reweigh the evidence when reviewing a lower court's findings. *Hooks v. State*, (1980) Ind., 409 N.E.2d 618.

In the instant case, there was substantial evidence that Appellant possessed and threatened the use of a gun when he committed these crimes. The victim testified that Appellant had a gun which she saw in the garage. Mr. Podkul testified that when Appellant "jumped" towards him in the alley, Appellant made a threatening gesture while holding his hand in his pocket as though he had "a gun or something." The victim's brother, C.B., testified that Appellant "was saying he had a

gun on his side." Although C.B. also testified on direct examination that he did not remember seeing Appellant's gun, Detective Baughman testified during his direct examination that C.B. previously had told him that he observed Appellant with a gun on his side and that Appellant's gun was big and black and had a pearl handle. Appellant admitted in his written statement to police, see II below, that he had with him during these crimes a loaded, black .357 gun with a pearl handle. We now find that there was sufficient evidence from which the trier of fact could find that Appellant was armed with a deadly weapon during the commission of his crimes. Moreover, we find sufficient evidence to support both of Appellant's convictions.

II

Appellant next argues that the trial court committed reversible error when it denied his motion to suppress his written waiver of rights and his incriminating statement made to police. The trial court subsequently admitted both into evidence. Appellant specifically argues that the State did not establish that his waiver and statement were given in a knowing, intelligent and voluntary manner since he was "functionally illiterate", he was not told what offenses he was charged with and he was intoxicated when he executed his waiver.

It is well-settled that the admissibility of a confession or other incriminating statement is controlled by determining from the totality of the circumstances whether or not the confession was given voluntarily. The question of voluntariness is one for the trial court and we review the question on appeal as we do other sufficiency matters. Accordingly, we do not weigh the evidence or judge the credibility of witnesses but rather consider only the evidence and reasonable inferences therefrom which are favorable to the trial court's ruling. If, from that viewpoint, there is substantial evidence of probative value to support the trial court's ruling, the ruling will not be disturbed. *Rowe v. State*, (1983) Ind., 444 N.E.2d 303; *Wash-*

*ington v. State,* (1982) Ind., 441 N.E.2d 1355; *Smith v. State,* (1982) Ind., 432 N.E.2d 1363.

■ The record reveals that the trial judge carefully reviewed Appellant's contentions before deciding that Appellant understood the significance of his waiver and voluntarily gave it and his statement. The trial court specifically ruled upon Appellant's motion to suppress as follows:

"I think it is properly suggested that the first consideration is to determine whether or not the waiver was made intelligently and knowingly, with an understanding of what he was doing. The law establishes a burden that the Defendant must meet, for the Court to rule on such a question. The evidence that I have heard today is that Mr. Lindsey recalls being called down from the cell the next morning, the next day [after his arrest], as it were, and speaking to officers in the Hammond Police Department. He admits to being advised of his rights. He also testifies that he has been advised of those same rights on a number of occasions, but he does not admit anything else. It suggests that he says, very flatly, that he did not sign, that he did not fill in those blanks, he did not sign the statement. That testimony, I believe, is not credible. To consider the letters or the contents of those letters, I don't even remember what the contents were; but I do recall seeing Mr. Lindsey's handwriting. And while I don't profess to be a handwriting expert, there is similarity in it. I do not believe that the officers—if he said he didn't say some of the things that were in that statement, that would be a different proposition; but I don't think they would do the probable penning in his name or signing the signature on a waiver that he did not sign. On that side we have testimony that is less than credible. On the other side we have the testimony of the officers saying that they read to him his rights, and it is significant that they took longer than is usual in the waiver form. I think the average time is probably three (3) minutes it takes to go through it, according to the signatures and the time noted, certainly not nine (9) and ten (10) minutes. They also indicate, significantly, that there was a question about some aspect of the waiver form and that was resolved by an explanation, but no further questions. As to the waiver, I believe that the waiver was executed voluntarily and with an understanding of his rights. If we accept the fact that Mr. Lindsey is not as literate as one should hope—it is possible that he has difficulty reading—it would have been much better had the officers answered the questions or resolved his apparent dilemma about what he was charged with then, at the time or during this statement and included that. I do not believe, however, that a person who cannot read, necessarily, cannot understand. They are different functions, different processes; and it is quite obvious, Mr. Lindsey has appeared before me at other times. He responded to questions and answers in this Courtroom, appropriately. I am not going to quarrel with the fact that he may not be able to read, but I do not believe that he has problems, an overwhelming problem, with understanding the English language or being able to comprehend what is being said to him, for that matter, being able to make a voluntary statement. I am going to deny the Motion to Suppress at this time."

The record reveals that Appellant's "question" about the waiver form pertained to the meaning of "coercion" as used in that part of the waiver statement which read:

"No promises or threats have been made to me and no pressure or *coercion* of any kind has been used against me to procure any statement or induce any conversation." (emphasis added).

We find that Officers Townsell and Baughman both testified to the court that Officer Townsell gave Appellant a definition of "coercion" when Appellant apparently expressed confusion over the word before signing the waiver form. This evidence supports the trial court's findings. More-

over, we believe that Appellant need only have understood the meaning of the words "no promises or threats" to have been capable of giving a voluntary waiver. Since Appellant did not question those words, his particular illiteracy claim must fail. The record also reveals that Officers Townsell and Baughman both testified that Appellant was informed that he was charged with rape immediately after he made his waiver but before he gave his statement. Arresting Officer Seratin further testified that Appellant did not smell like he had been drinking alcoholic beverages and did not act intoxicated when he was arrested. We note that Appellant made his waiver at least seventeen hours after being arrested which suggests that the effect of any intoxicant he may have ingested prior to his arrest would have worn off before his waiver and statement were made. We now find that there was substantial evidence of probative value to support the trial court's finding that Appellant knowingly, intelligently and voluntarily waived his rights and made his incriminating statement.

Appellant additionally argues that the trial court abused its discretion by referring in its above quoted statement to certain letters which were never admitted into evidence. The trial court specifically stated in its statement, however, that it could not remember the contents of the letters and only mentioned them as having provided a sample of Appellant's signature. The letters apparently had been written by Appellant and sent to the trial court. There is no error on this issue.

### III

Appellant lastly argues that the trial court abused its discretion and committed reversible error when it allowed into evidence at trial the testimony of the then five-year-old victim. Appellant specifically contends that the State failed to prove that K.B. was competent to testify. Children less than ten years old may testify if "it appears that they understand the nature and obligtion of an oath." Ind.Code § 34–1–14–5 (Burns Supp.1984). Of course the determination of a child's competency lies within the trial court's discretion since the trial judge has the opportunity to observe the child's intelligence, demeanor and maturity. *Buttram v. State*, (1978) 269 Ind. 598, 382 N.E.2d 166, *reh. denied* (1979). Accordingly, this Court has held that a child is competent to testify if the trial court finds that the child knows the difference between telling the truth and telling a lie and knows that he or she will be punished for telling a lie. *Staton v. State*, (1981) Ind., 428 N.E.2d 1203; *Johnson v. State*, (1977) 265 Ind. 689, 359 N.E.2d 525. The trial court's decision will not be reversed unless it represents a manifest abuse of discretion. *Stewart v. State*, (1982) Ind., 442 N.E.2d 1026.

The record in the instant case shows the following examination of K.B.:

"BY THE COURT:

\* \* \* \* \* \*

Q [K.], do you know what telling the truth is?

A Yeah, yeah.

Q Do you know what telling a lie is?

A Yeah.

Q What is telling a lie or a story?

A (No response).

Q What happens to you, if you tell a lie?

A My Mommy gets mad.

Q Does your Mommy ever spank you?

A Sometimes.

Q Did you say, yes, sometimes?

A Yeah.

\* \* \* \* \* \*

Q Did your mother tell you that you're not to tell any lies?

A (No response).

Q [K.] did your mother or your grandmother ever tell you that you shouldn't tell stories, that you should always tell the truth?

A Yeah, tell the truth.

Q Do you understand that today, what you tell us today, you have to tell the truth about it?

A Yeah.

Q   And you promise that you will do that?

A   Yeah.

Q   You won't make up any stories?

A   Nope."

We now find that this dialogue demonstrates that the trial court did not abuse its discretion by finding K.B. competent to testify.  There is no error.

Finding no error on any issue, we affirm the trial court in all things.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.