**Fred PETERS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 783S252

Supreme Court of Indiana.

Nov. 16, 1984.

Rehearing Denied Jan. 18, 1985.

William C. Erbecker, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Fred Peters was found guilty of Murder, a felony, by a jury in the Marion County Superior Court on December 15, 1982. On January 4, 1983, the Honorable Charles C. Daugherty sentenced Appellant to a term of sixty (60) years to the Indiana Department of Corrections. Appellant now directly appeals and raises the following three issues for our review:

1) error of the trial court in determining the competency of a witness;

2) error of the trial court in denying a motion for continuance; and

3) sufficiency of the evidence.

During the evening of February 16, 1982, Appellant discovered his stepsons, DeMarco Shawn Eric Lewis (hereinafter, the victim) and Andre Lewis, had eaten some lollipops kept in their mother's room. At this time, Appellant's wife and the victim's mother, Sharon Y. Peters, was sitting in a nearby room. She was to leave for work shortly. She heard Appellant scream at the boys in the hallway and then heard the Appellant whipping them with a belt. Appellant demanded the children stop crying; when they did not, the victim's mother heard someone hit the wall and fall to the floor. The victim's mother further testified Appellant was trained in the martial arts and she was too afraid to interfere with Appellant's actions.

Andre Lewis was seven years old at the time of the trial. He testified that Appellant struck him in the stomach and struck his head against a wall two to three times. Appellant also struck the victim three times in the stomach, banged the victim's head three times against the wall, threw the victim into the living room, demanded that the victim get up, and when he did not, kicked him in the stomach. Afterwards, Appellant put the victim to bed in the top bunk of the boys' bunk bed. When the victim later fell out, Appellant returned him to the top bunk.

At 6:51 a.m. the following morning an ambulance was summoned to the Peters' residence. The paramedics were directed to the children's bedroom by Appellant where they discovered the victim was unconscious. His breathing was rapid, his pulse weak and hard to detect, and his stomach was distended indicating internal injuries. The victim's pupils were nonreactive and dilated. He had no voluntary movements or reactions to pain, and the positioning of his arms was indicative of neurological injuries. The victim was then transported to St. Vincent Hospital in Indianapolis.

When the victim reached the hospital he was in very critical condition. Doctors found blood in his abdomen and in the cavity surrounding his brain. When surgery was deemed necessary, the victim was transferred to Riley Children's Hospital for more specialized treatment.

At Riley Hospital, the victim was examined prior to surgery by Dr. David Charles Hall, the Chief Neuro-Surgery Resident at the Indiana University Medical Center. Dr. Hall assessed the degree of suspected brain damage before he performed exploratory surgery. Neither pupil reacted to light, there was hemorrhaging of the retinas, and indications of severe brain stem injury. At this point, the victim could not breathe independently. Dr. Hall also examined the C.T. scan taken at St. Vincent Hospital which showed bleeding in the brain and severe brain swelling around the brain stem. He felt the victim was most likely brain dead at the time of the examination.

When the victim was promptly operated upon, approximately one-half gallon of blood was removed from the victim's abdomen. Before the surgeons could find the source of bleeding, the victim's heart stopped. After trying to revive the child for about half an hour, the child was pronounced dead. Dr. Thomas Weber, one of the performing surgeons, testified that the cardiac arrest was caused by irreversible shock from blood loss.

## I

Appellant first asserts the trial court erred by determining Andre Lewis, Appellant's stepson, was competent to testify. Appellant's contention is predicated on three allegations: first, Andre was "mentally retarded or had a learning disability", second, Andre was of tender years, and third, Andre was programmed to testify against his stepfather. Andre was seven years old at the time he testified.

Children less than ten years old may testify if "it appears that they understand the nature and obligation of an oath." Ind. Code § 34–1–14–5(2). The determination of a child's competency lies within the trial judge's discretion since the trial judge has the opportunity to observe the child's intelligence, demeanor and maturity. *Lindsey v. State,* (1984) Ind., 465 N.E.2d 721; *Buttram v. State,* (1978) 269 Ind. 598, 382 N.E.2d 166, *reh. denied.* This Court has held that a child is competent to testify if the trial court finds the child knows the difference between telling the truth and telling a lie and knows that he or she will be punished for telling a lie. *Staton v. State,* (1981) Ind., 428 N.E.2d 1203. Accordingly, the trial court's decision will not be reversed unless it represents a manifest abuse of discretion. *Lindsey, supra; Stewart v. State,* (1982) Ind., 442 N.E.2d 1026.

The record in this case clearly shows the trial court made all the requisite inquiries of Andre to determine Andre's ability to comprehend his obligation to testify truthfully. Andre's responses obviated the fact he knew the difference between lying and telling the truth and understood he was to testify truthfully. Therefore, Appellant has failed to show the trial court abused its discretion by allowing Andre to testify due to his tender age.

Appellant does not cite us to any part of the record to substantiate his claim that Andre lacked the mental capacity to testify competently. Furthermore, the record is devoid of any indication that Andre was mentally handicapped. As mentioned earli-

er, since the trial judge has the opportunity to observe the child's *intelligence*, demeanor, and maturity, his determination of competency will not be disturbed unless shown to be an abuse of discretion. *Lindsey, supra.* Without more than a mere allegation on Appellant's part that Andre was mentally incompetent to testify, we have no basis upon which to find the trial court abused its discretion in allowing Andre to testify.

Finally, Appellant argues that Andre was programmed to testify against his father. Again, this accusation is completely unsupported by the record. Appellant cites nothing in the record to support this contention, and Andre's answers to Appellant's questions on cross-examination indicated that Andre had gone over his testimony only three times in the ten month period between his brother's death and the trial. Consequently, Appellant has failed to show an error on the part of the trial court in allowing Andre to testify against the appellant.

## II

Appellant further claims the trial court erred by denying his motion for a continuance two weeks prior to trial. Six continuances had been granted Appellant before this seventh one was denied. When the sixth continuance was granted, the trial court informed the parties no further continuances would be granted.

It is well settled that the denial of a motion for a continuance having no statutory basis will be reviewed on appeal only for an abuse of discretion. *Sidener v. State,* (1983) Ind., 446 N.E.2d 965. Whether good cause for a continuance has been shown rests within the sound discretion of the trial judge, and in order to demonstrate an abuse of discretion the record must reveal that the appellant was prejudiced and not at fault. *Id.; Johnson v. State,* (1982) Ind., 432 N.E.2d 1358.

Appellant's original counsels moved to withdraw on November 16, 1982. Their motion was granted November 19, 1982, and Thomas Easterday was appointed the same day. Mr. Easterday filed for Appellant's seventh continuance on November 29, 1982 which the court denied the following day. William Erbecker, who exclusively handled the case in court, filed his appearance December 1, 1982. The trial court refused to allow Easterday to withdraw his appearance. The trial commenced December 13, 1982.

Between Easterday and Erbecker, defense counsels had three and a half weeks to prepare. They had received all the materials from the prior counsels, and nearly ten months had elapsed between the date of the victim's death and the final trial date. At trial Erbecker indicated he did not request the continuance, rather Easterday had made the request. When Easterday attempted to withdraw he informed the court that Erbecker, over several offers, had not expressed any interest in the assistance of Easterday. Erbecker exclusively handled the case at trial.

In view of the facts that six continuances had already been granted, that Erbecker had Easterday's assistance available to him but did not make use of it, and that he also had previous counsels' discovery and preparation, we find the trial court did not abuse its discretion by denying Appellant's motion for a continuance.

## III

Finally, Appellant asserts insufficient evidence was presented at trial to support a murder conviction. Appellant argues the State failed to support an essential element for a murder conviction, that Appellant knowingly or intentionally killed the victim. Ind. Code § 35-42-1-1 (1979) Repl.). According to Appellant, the jury could not have convicted Appellant of murder based on the evidence presented, but could have made a finding of involuntary or voluntary manslaughter at the most. Furthermore, Appellant argues there was insufficient evidence from which the jury could have concluded that the Appellant inflicted the fatal injuries. We do not agree.

Upon a review for sufficient evidence this Court looks only at evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. On review we neither weigh conflicting evidence nor judge the credibility of witnesses. *Smith v. State*, (1984) Ind., 465 N.E.2d 1105, *reh. denied; Napier v. State*, (1983) Ind., 445 N.E.2d 1361, *reh. denied.*

Contrary to Appellant's assertion, there is strong evidence indicating the victim's fatal injuries were inflicted by Appellant. Andre Lewis described the beating in considerable detail, and as we already have determined no error was committed by the trial court in allowing Andre to testify. His testimony favored the State's position. Furthermore, his testimony about where Appellant struck the victim was completely consistent with medical testimony presented at trial. Dr. Diane Davis Davie performed the autopsy. She found bleeding in the victim's intestines, pancreas, liver, diaphragm, back muscles, between the ribs, scalp and brain. She also found three freshly broken ribs on the left side. Additionally, she discovered extensive damage within the victim's brain consistent with his head being impacted on a stationary surface. Dr. Davie testified that a fall from a bed, even onto a metal chair, would be unlikely to produce the victim's injuries. She also stated the victim's injuries were the result of at least six separate blows. She attributed the cause of death to multiple, traumatic injuries from blunt forced trauma, with a loss of a considerable amount of blood due to the injuries. There is no merit to Appellant's assertion that the State failed to prove beyond a reasonable doubt that Appellants acts caused the victim's death.

Furthermore, there is no merit to Appellant's argument that the State failed to prove Appellant knowingly or intelligently killed the victim. In *Burkhalter v. State*, (1979) 272 Ind. 282, 397 N.E.2d 596, we upheld a murder conviction where the adult appellant dunked and kicked a four-year-old boy and asked the boy rhetorical questions such as, "Hey Boy, are you trying to make me kill you?" Clearly, the duration, brutality and relative strengths of the defendant and victim are factors that can be considered by the jury as indications of defendant's intent to kill. *Id.; Shackelford v. State*, (1976) 264 Ind. 698, 349 N.E.2d 150. Appellant, who had been trained in the martial arts, struck the nine-year-old victim in the stomach three times, banged the victim's head against the wall three times, threw the victim into the living room, demanded the child get up and when he did not, kicked him in the stomach. It was well within the province of the jury to draw the inference of knowledge or intent from the facts of this case. We find that the verdict is clearly supported by sufficient evidence.

Finding no error, the judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.