Ernest DRAKE, Appellant,

v.

STATE of Indiana, Appellee.

No. 46S00–8812–CR–00995.

Supreme Court of Indiana.

June 27, 1990.

⟜109

William Janes, Michigan City, for appellant.

Linley E. Pearson, Atty. Gen. and Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Ernest Drake was convicted of Child Molesting, a Class A felony, and Criminal Confinement, a Class B felony. Drake was given an enhanced sentence of fifty (50) years on the child molesting conviction and a presumptive twenty (20) year sentence on the criminal confinement conviction, said sentences to run concurrently for a total of fifty (50) years. He appeals directly to this Court and raises the following six issues:

1. whether the trial court erred in failing to immediately release Appellant on recognizance on November 25, 1987 pursuant to Ind.R.Crim.P. 4(A);

2. whether the trial court erred in allowing testimony regarding the victim's lack of past sexual conduct;

3. whether the trial court erred in issuing a search warrant for Appellant's person without prior notice or knowledge of Appellant or his counsel;

4. whether the trial court erred in striking the entire direct testimony of an essential defense witness after he in-

voked the privilege against self-incrimination;

5. whether the trial court erred in disallowing Appellant adequate and sufficient time to review the pre-sentence investigation report prior to sentencing; and

6. whether the trial court erred in enhancing Appellant's sentence for Child Molesting, a Class A felony, based upon unauthorized factors and without considering the facts of the specific crime.

The facts most favorable to the verdict show that on the night of May 10, 1987, the victim, L.H., was at Washington Park near Lake Michigan in Michigan City, Indiana, waiting for a friend to return to the park and give her a ride. L.H., who was fifteen (15) years old at the time, planned on staying overnight at her friend's home. When her friend did not arrive after a considerable time, L.H. called her friend who told her she had driven to the park but was unable to find her. L.H. told her friend that she would find a ride and call her back later. L.H. saw Appellant, her grandmother's former boyfriend whom L.H. had known for several years, in his car with a friend. That friend also happened to be L.H.'s cousin, Allen Briggs. L.H. accepted a ride from Appellant, and she got into the back seat.

L.H. told Appellant that she needed to make a telephone call. She called her friend and told her that she was on her way there. Appellant then dropped off Briggs near a car wash and L.H. got into the front seat. Feeling somewhat uneasy by Appellant's silence, L.H. told Appellant to drop her off at another friend's house nearby. Appellant turned down the street L.H. requested, and the next time she looked up, Appellant was holding a revolver with a four (4) to six (6) inch barrel to her left temple. When L.H. asked what he was doing, Appellant replied: "you know what time it is." As he approached a stop sign, Appellant told L.H. to roll up the window and lock the door. He then fired a shot on the driver's side of the car, near the emergency brake. After firing the

gun, Appellant held the gun down by L.H.'s leg.

Appellant parked the car in front of his old apartment and told L.H. that she had two choices, either do what he wanted or he would "pop" her and throw her back in the woods. L.H. began to cry and he told her to shut up. He tried firing the gun again, but it only made a clicking noise. Appellant began tugging at her shorts and continued to point the gun alternately at her head and leg. He placed the barrel of the gun at the back of her head, began shoving it at her, and told her to get into the back seat. L.H.'s shorts and underpants were removed. Appellant pulled his pants to his knees and proceeded to have sexual intercourse with L.H., who was crying and in pain. After an extended period of time, Appellant stopped and told her to get dressed so he could take her where she wanted to go. Appellant then drove to his current apartment and went in to retrieve something. L.H. got out of the car and ran to another apartment for help. A gentleman brought her inside and summoned the police at or about 1:40 a.m. L.H. gave a statement to the police after she was examined at a nearby hospital. Appellant was arrested later that day.

## I.

█ Appellant contends the trial court erred by failing to release him on recognizance pursuant to Ind.R.Crim.P. 4(A) after he had been detained in jail on criminal charges without a trial for a period exceeding six months. Appellant was arrested and charged on May 11, 1987. He appeared in court for an initial hearing on May 22, 1987. A little more than six months later, on November 25, 1987, Appellant filed a motion for release on recognizance. The trial court granted this motion nineteen days later on December 14, 1987, the first day of trial. Appellant argues that this nineteen day delay in releasing him caused him prejudice to the extent that he was unable to fully and adequately prepare a defense with counsel. Appellant acknowledges that this Court has ruled contrary to his position in *Ross v. State* (1980), 274 Ind. 588, 413 N.E.2d 252, but

requests that we reconsider our holding in *Ross* and grant him a new trial and time to be out on his own recognizance so as to more fully prepare an effective defense. This we decline to do.

As this Court stated in *Ross:*

Appellant contends that the overruling of his motion for discharge impaired his ability to cooperate with his counsel in the preparation of his case for trial and that he was thereby prejudiced. However, he does not specify in what way he was impaired from cooperating with his counsel.

It is clear that this ruling was in error and that the defendant was entitled to be released on his own recognizance after the six-month period had expired. However, he was not entitled to discharge. The State was authorized to bring him to trial and this error does not require reversal.

*Ross,* 274 Ind. at 593, 413 N.E.2d at 256 (citations omitted).

Drake presents no error on this issue.

## II.

█ Appellant next claims that the trial court erred in allowing testimony from the victim's examining physician regarding the victim's lack of prior sexual conduct. Relying on the rape shield statute, IC 35–37–4–4, Appellant maintains that evidence of L.H.'s past sexual conduct or lack thereof is irrelevant to the issues at hand, citing *Riddle v. State* (1980), 273 Ind. 112, 402 N.E.2d 958. This Court has consistently held that the rape shield statute was enacted to protect the victims, and not those accused, of rape. *Forrester v. State* (1982), Ind., 440 N.E.2d 475, 479. We upheld this very principle when we approved the trial court's excluding evidence of the victim's past sexual conduct in *Riddle,* 273 Ind. at 116, 402 N.E.2d at 961. Drake contends that evidence of the victim's virginity should not have been admitted because it was solely designed to elicit sympathy for her; hence, its prejudicial effect outweighed its probative value. This is simply not the case. The laboratory re-

sults following the victim's medical examination did not reveal the presence of any seminal fluid. The physical examination of the victim did show, however, that the victim's hymen was torn. The examining physician could not determine to a reasonable degree of medical certainty when L.H.'s hymen was torn. Therefore, the victim's statements to her examining physician regarding her virginity prior to this incident were probative to establish beyond a reasonable doubt not only that she was molested, but was molested to the extent that penetration occurred as well. Moreover, the jury was specifically instructed not to let sympathy for the victim influence its decision-making. Despite Appellant's claims to the contrary, the probative value of this evidence outweighed any prejudicial effect that it may have had on the jury. *Forrester, supra.*

The trial court did not err in admitting this testimony.

### III.

Appellant maintains the trial court erred in issuing a search warrant for Drake's person without prior notice or knowledge of Drake or his counsel. The State submitted an *ex parte* application for issuance of a search warrant for Drake's head and pubic hair. A probable cause affidavit was presented to the trial court which stated that such a search could disclose materials which constituted evidence that a particular person committed the offense. An evidentiary hearing was held at the State's request where witnesses were sworn and evidence was heard. Neither the defendant nor his counsel were given notice of the probable cause hearing. The trial court found that probable cause existed and accordingly issued the search warrant. The search warrant was returned and hair from Appellant's head and pubic area were seized.

The State was not obliged to give the defendant notice and an opportunity to be heard at the probable cause hearing. All that is required is the search warrant be based upon facts stated in the affidavit and the rational and reasonable inferences drawn therefrom. *Blalock v. State* (1985), Ind., 483 N.E.2d 439, 444. We find there was probable cause and the trial court properly issued the search warrant in this case. In any event, Appellant admits in his brief that the results of the hair analysis were not prejudicial to his defense. *Appellant's Brief* at 11. Accordingly, even if the trial court did err by issuing this search warrant, which he did not, the error would have been harmless beyond a reasonable doubt.

Appellant presents no error here.

### IV.

Appellant next argues the trial court erred in striking the entire testimony of an essential defense witness after he invoked his fifth amendment privilege against self-incrimination and refused to answer certain questions on cross-examination. The issue concerned a bullet that the police found lodged in the vehicle's dashboard. L.H. testified that Appellant fired his gun in the general direction of the emergency brake while she was in the car; however, no bullet was found near the emergency brake. Appellant attempted to introduce testimony from Columbus Liggins that a few weeks before the incident in question, he and Appellant were driving to a liquor store in Appellant's vehicle when Appellant fired a bullet into the dashboard. On cross-examination, Liggins refused, on fifth amendment grounds, to answer questions regarding his activities at the liquor store prior to the discharge of the weapon. When Liggins invoked this privilege against self-incrimination, the State moved that his testimony be stricken in its entirety. The trial court granted the State's motion to strike. Appellant contends that this testimony, if not stricken, would have helped rebut L.H.'s allegation that he fired a gun in the general direction of the emergency brake while L.H. was in the car. Appellant also claims Liggins' testimony was corroborative of his statement to police when he was arrested.

Appellant cites *Clark v. State* (1985), Ind., 480 N.E.2d 555, for the proposition that the trial court's granting the State's

motion to strike constituted reversible error. In *Clark*, the trial court denied the defendant's motion to strike the testimony of a State's witness who refused to answer various questions on cross-examination. This Court found no reversible error in *Clark* and held that the defendant's right to full, adequate and effective cross-examination was not prejudiced by the witness' refusal to answer questions. *Clark*, 480 N.E.2d at 559. Here, the issue does not concern the defendant's right to cross-examine the state's witness. The issue is whether the trial court committed reversible error in striking the entire testimony of a defense witness who invoked his privilege against self-incrimination.

■ The trial court did not commit reversible error. There is no need to examine the extent of cross-examination that the State was allowed. Even if Liggins' testimony was not stricken and the jury believed everything he said to the exclusion of evidence to the contrary, the most he could establish, given every reasonable inference, was that Appellant did not fire his gun during the incident in question. However, even if Appellant did not discharge the weapon, there was more than sufficient evidence to support his convictions for class A felony child molesting and class B felony criminal confinement. Both L.H. and Allen Briggs testified that Appellant had a gun in his car on the night in question. L.H. further testified Appellant threatened the use of deadly force if she did not submit to his demands, both verbally and by pointing the gun alternately at her head and leg during the course of these crimes. Such menacing use of a deadly weapon was more than sufficient to upgrade the child molesting conviction to class A felony status and criminal confinement to class B felony status. *See Lindsey v. State* (1984), Ind., 465 N.E.2d 721, 723 (attempted child molesting conviction properly elevated to class A felony status where defendant admitted in written statement to police that he had with him during the crime a loaded, black .357 gun with a pearl handle); IC 35–42–4–3(c) (child molesting elevated to class A felony status if committed "by using or threatening the use of deadly force, or while armed with a deadly weapon"); *Mears v. State* (1983), Ind., 455 N.E.2d 603, 605 (criminal confinement conviction properly elevated to class B felony status where defendant pointed cocked gun at victim and ordered her to lie on floor); IC 35–42–3–3 (criminal confinement elevated to class B felony status if committed "while armed with a deadly weapon"). The State did not have to establish that Appellant actually fired the gun to let his intentions be known.

Columbus Liggins was not present at the scene of these crimes; accordingly, he could not refute the testimony of Allen Briggs that Appellant had a gun in his car on the night in question. Nor could Liggins refute L.H.'s testimony that Appellant was armed and threatened the use of deadly force both verbally and by pointing the weapon directly at her. Given the undisputed evidence that Appellant was armed with a gun during the course of these crimes, we find the trial court did not commit reversible error by striking Liggins' testimony.

## V.

■ Appellant's next argument is the trial court did not allow him adequate and sufficient time to review the pre-sentence investigation report prior to his sentencing. Appellant's trial counsel was provided the pre-sentence investigation report only a few hours prior to sentencing, and the trial court only allowed Appellant fifteen (15) minutes to review the same. Appellant acknowledges there is no set deadline for filing pre-sentence reports and each case is to be judged within its own circumstances. *Lang v. State* (1984), Ind., 461 N.E.2d 1110, 1114. In *Lang*, the pre-sentence report was filed the night before the sentencing hearing and copies were left for the prosecutor and defense counsel. At the beginning of the sentencing hearing, Lang indicated that he had not yet seen a copy of the pre-sentence report and his attorney indicated that he had just received the report that day. Since both had the opportunity to review the report, no error was found. *Lang*, 461 N.E.2d at 1114–15.

In the instant case, Appellant prays that this Court grant him a new sentencing hearing, but fails to point out what modifications or corrections he would make in the pre-sentence report. Indeed, he has failed to include a copy of the pre-sentence report in either his brief or in the Record filed with this Court. In short, he has failed to show how he was prejudiced by the short period of time he had to review this report with his counsel. *See Coppock v. State* (1985), Ind., 480 N.E.2d 941, 945.

No error is presented on this issue.

## VI.

Finally, Appellant claims that the trial court erroneously enhanced his sentence based on non-statutory aggravating factors that had nothing to do with the commission of this specific crime. After defense counsel conducted his direct examination of witness Liggins, the court took a one hour recess for lunch. Prior to the recess, Appellant addressed the court and specifically requested permission to speak with Liggins in an effort to persuade him to testify and reconsider the invocation of his fifth amendment privilege against self-incrimination. Appellant also requested the court's permission to allow him to find other character witnesses to testify on his behalf. The trial court granted Appellant's request to leave and informed him that the trial would reconvene at 1:00. Appellant left the courtroom and did not return that afternoon. Defense counsel stated for the record that he attempted, but was unable, to locate Appellant and bring him back to court that afternoon. The court bailiff stated that at or about 1:35, he observed Appellant being driven in a white automobile which entered one end of the courthouse parking lot and exited the other. The defense called no more witnesses and rested its case. The jury returned a verdict of guilty.

At sentencing, the trial court enhanced the presumptive thirty (30) year sentence to fifty (50) years and stated the following:

The [c]ourt finds no mitigating circumstances. The aggravating circumstances are as follows: that the defendant has a record of seven, possibly eight, prior felony convictions, in addition while out on his own recognizance, during his trial he attempted to leave the jurisdiction of the court by stealing a car and leading a chase by as many as 16 police cars, at speeds up to 90 miles an hour, fortunately no one was hurt, but the result of this conduct could have resulted in a tragic injury or death of policemen and the general motoring public; not to mention his own life. The conduct warrants the enhancement of the presumptive sentence from 30 years to 50 years. Accordingly, on the jury's verdict of guilty you are sentenced to 50 years, you are given credit for 252 days in confinement but because of your conduct while on your own recognizance, but still under the pending charge the [c]ourt does not recommend good time.

*Record* at 289–90. Appellant argues that this had nothing to do with the specific crimes charged and therefore should not have been considered by the trial court in enhancing his sentence. Appellant cites *Smith v. State* (1986), Ind., 491 N.E.2d 193, 197, and *Haggard v. State* (1983), Ind., 445 N.E.2d 969, 974, *modified in part on other grounds by Bailey v. State* (1985), Ind., 472 N.E.2d 1260, 1263, for the proposition that the record on appeal must show the determination of the sentence was based upon a consideration of the facts of the specific crime and the relation of the sentence imposed to the objectives which will be served by that sentence.

This Court held in *Haggard* that the imposition of mandatory consecutive sentences pursuant to IC 35–50–1–2(b) only applies if a defendant commits a crime while on probation, parole, or serving a term of imprisonment. *Haggard*, 445 N.E.2d at 973. However, IC 35–50–1–2(a) gives the trial court the discretion to determine whether terms of imprisonment shall be served concurrently or consecutively when evidence of the facts of each offense is before the court. *Id.* In *Smith*, this Court upheld the imposition of consecutive sentences where the trial court considered, among other things, the fact that the defendant had an extensive criminal history

and had even taken his public defender hostage while his case was pending. *Smith*, 491 N.E.2d at 197. Similarly, in the instant case, the trial court considered Appellant's criminal history as well as his theft of an automobile and subsequent attempt to flee the jurisdiction of the court while his trial was still pending. These were proper reasons for the enhancement of Appellant's sentence.

The trial court is affirmed.

All Justices concur.