**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 22 2013, 11:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DUANE J. SNOW**
Snow Law Office
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Department of Child Services
Central Administration
Indianapolis, Indiana

**MICHAEL SPECIALE**
Department of Child Services
Allen County Office
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE INVOLUNTARY ) 
TERMINATION OF THE PARENT-CHILD )
RELATIONSHIP OF K.W., K.O.A., )
AND K.E.A., MINOR CHILDREN, )
AND THEIR FATHER, O.W., )
 )
O.W., )
 )
    Appellant-Respondent, )
 )
      vs. )    No. 02A04-1205-JT-285
 )
INDIANA DEPARTMENT OF CHILD )
SERVICES, )
 )
    Appellee-Petitioner. )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause Nos. 02D08-1104-JT-72, 02D08-1104-JT-73, 02D08-1104-JT-74

**January 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Respondent O.W. ("Father") appeals the juvenile court's order terminating his parental rights to K.W., K.O.A., and K.E.A. ("the Children"). Father alleges that the juvenile court abused its discretion in denying his pre-termination-hearing continuance motion and that the Indiana Department of Child Services ("DCS") did not provide sufficient evidence to support the termination of his parental rights. Concluding that the juvenile court did not abuse its discretion and that the evidence was sufficient to support the termination of Father's parental rights, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Father has three biological children with T.A. ("Mother): K.W., born November 8, 1999; K.O.A., born October 21, 2001; and K.E.A., born July 23, 2003. Since 2003, Father has had sporadic contact with the Children and has provided only minimal support. On June 6, 2007, DCS filed a petition alleging that the Children, who were then residing with Mother, were children in need of services ("CHINS"). On June 18, 2007, the juvenile court adjudicated the Children as CHINS, ordered that Mother participate in various services, and maintained the Children's placement with Mother. Father did not appear during the CHINS proceeding.

On September 16, 2008, the juvenile court held a hearing and found that DCS had properly served Father with notice of the CHINS proceeding and that the allegations in the CHINS petition relating to Father were true. The juvenile court also reaffirmed its finding

that the Children were CHINS. On February 17, 2009, the juvenile court held a permanency hearing, which Father did not attend. On August 4, 2009, the juvenile court held a periodic review hearing, which Father also did not attend. At a hearing on August 27, 2009, the juvenile court accepted DCS and the court-ordered special advocate's ("CASA") recommendation that the Children be removed from Mother and placed in foster care.

On February 2, 2010, the juvenile court held a permanency hearing (not attended by Father) after which it approved a permanency plan that provided for termination of Mother's and Father's parental rights and adoption of the Children. On July 1 and December 18, 2010, the juvenile court conducted a review and permanency hearing, and the court found that Father, who had attended neither hearing, had failed to comply with his parental participation plan ("PPP") and approved the plan of termination of parental rights. On May 19, 2011, Father appeared at a review hearing, following which the juvenile court found that Father had not visited the Children, enrolled or satisfactorily participated in services, or demonstrated an ability to benefit from services.

Meanwhile, on May 6, 2011, DCS filed petitions for termination of Father's and Mother's parental rights to each of the Children.[1] Father appeared at the initial hearing on the termination petitions on September 5, 2011, and entered a denial of the allegations. On September 13 and 20, 2011, the juvenile court conducted an evidentiary hearing. On the first day of the evidentiary hearing, Father moved to continue the proceedings so that the possibility of placement with Olivia Williams (another one of Father's daughters who lives in

---

[1] Mother did not contest the termination of her parental rights to the Children and is not participating in this appeal.

3

Minnesota) could be studied further. At the conclusion of the hearing, Father orally moved to hold the proceedings in abeyance for the same reason. The juvenile court took the matter under advisement.

On December 20, 2011, the juvenile court entered its order terminating Father's parental rights to the Children. The juvenile court found, *inter alia*, that

16. The children have been removed from the care of the parents under a dispositional decree for more than six (6) months.
....
20. On or about August 16, 2010, [Father] completed a psycho-social assessment with Family and Children Services therapist Diana Moore. As a result of that assessment, [Father] was referred for drug and alcohol counseling. She recommended that he complete a 12-step program and submit to random drug screens. From her testimony the Court finds that [Father] had a long history of substance abuse. By his self report to her, he last used crack cocaine in January 2009. She was concerned by what she characterized as his minimal insight with regard to substance abuse and that he used poor judg[e]ment in the past.

21. From the testimony of the Department's casemanager, Jennifer Kracium, the Court finds that she spoke to [Father] and advised him how to locate AA groups in Minnesota. However, [Father] has not provided any documentation that he has completed the 12-step program recommended by Family and Children services.

22. [Father] tested positive for cocaine on August 22, 2010 and October 21, 2010. He tested positive for marijuana (THC) on June 10, 2011 and June 16, 2011. He refused to submit to a drug screen just prior to the commencement of the Factfinding on the termination petitions.

23. [Father] is Forty-nine years old. He resides in a home with his sister in Memphis, Tennessee. However, he also spends a significant amount of time each year in Minnesota where his twenty-one year old daughter, Olivia Williams resides.

24. The Department Casemanager Jennifer Kracium first learned of [Father's] adult daughter in 2010. From the casemanager's testimony the court finds that attempts to place the children with Olivia Williams through the interstate compact were not approved because Mrs. Williams did not respond to Minnesota's inquiries.

25. Olivia Williams resides with her mother in Cleveland, Minnesota. She has one child. She is employed and believes that she has the means and

4

ability to provide for the children. She asserts that Minnesota was not diligent in its efforts to contact her and is willing to cooperate with the interstate process if it can be renewed.

26. [Father] has fathered eight (8) children.

27. [Father] is disabled having suffered a significant back injury that impairs his ability to walk. He receives monthly Social Security Income (SSI) benefits of approximately $660.00 to $700.00 per month. A portion of his income is paid in rent to his sister. During the pendency of the underlying CHINS case he has not provided for the children's support.

28. [Father] is without means of independent transportation and travels by bus from Memphis, Tennessee to visit the children in Allen County.

29. In 2006, [Father] was convicted of a sex offense in Minnesota. He testified that the charges arose from a relationship he had with an adult woman who resided in the apartment below his. He served time in prison and, subsequent to his release, was jailed for his failure to register as a sex offender.

30. [Father] stipulates that because of his conviction for a sex offense the Department is precluded from placing the children in his care.

31. Andrew Liechty, a licensed clinical social worker and therapist with Gerald and Coslow Associates, has provided therapeutic counseling for the children for almost three years. Anxiety resulting from their foster care placement and life situations is the predominant issue in therapy. When first removed from Mother's care the children reacted with anger and displayed behavioral problems. They have since improved and their oppositional behaviors have declined. In therapy the children have acknowledged seeing their father a few times a year by they have not spoken in depth about him.

32. In contrast, the children's foster mother testified that all the children are anxious to see their father when a visit is scheduled. [Father] call the children once or twice every three weeks. He visited them four times in 2010. His visits have continued into 2011. She believes [Father] and children are bonded to one another.

33. Should the petitions to terminate the parent-child relationship be granted the Department has an appropriate plan for the child; that being adoption.

34. The children's [CASA], Julia McIntosh has concluded that termination of parental rights is in the children's best interests. In support of that conclusion, Ms. McIntosh noted that [Father] has had sporadic contact with the children and has tested positive for illegal substances. He has not completed his drug rehabilitation therapy. He does not have independent housing.

5

Appellant's App. pp. 31-33 (record citation omitted).

The juvenile court concluded that the statutory requirements for termination of parental rights had been met. The juvenile court noted that the Children had been placed outside the care of their parents for more than six months pursuant to a dispositional decree. The juvenile court also concluded that there was a reasonable probability that the reasons for the placement outside the home would not be remedied and that termination of parental rights is in the children's best interests. On January 17, 2012, Father filed a motion to correct error, which the juvenile court denied on May 7, 2012.

## DISCUSSION AND DECISION

The Fourteenth Amendment to the United States Constitution protects the traditional rights of a parent to establish a home and raise his children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id*. However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the child's interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id*.

The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id*. Termination of parental rights is proper where the child's emotional and physical

6

development is threatened. *Id*. The juvenile court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*.

### I. Whether the Juvenile Court Abused its Discretion in Denying Father's Motion for Continuance

"It is well settled that the denial of a motion for a continuance having no statutory basis will be reviewed on appeal only for an abuse of discretion." *Peters v. State*, 470 N.E.2d 708, 711 (Ind. 1984). "Whether good cause for a continuance has been shown rests within the sound discretion of the trial judge, and in order to demonstrate an abuse of discretion the record must reveal that the appellant was prejudiced and not at fault." *Id*.

Father contends that the juvenile court abused its discretion in not allowing more time to investigate placement of the Children with his daughter Olivia, who resides in Minnesota. Approximately one year before the termination hearing, Father provided DCS with Olivia's name, and DCS initiated an Interstate Compact for the Placement of Children ("ICPC"). There is evidence in the record, and the juvenile court specifically found, however, that Minnesota rejected Olivia as a potential placement because she failed to respond to telephone calls and letters. The juvenile court was free to conclude from this lack of even minimal cooperation that Olivia would not be found to be a suitable option for placement and that delaying the termination process would only delay permanency for the Children. While there is some evidence implying that Olivia's age (she was not yet twenty-one at the time of the initiation of the ICPC) might have been a factor in her rejection as a potential placement, the juvenile court was free to disregard this evidence and apparently did so. Father's argument

7

amounts to an invitation to reweigh the evidence, which we will not do.

## II. Whether the Juvenile Court Abused its Discretion in Terminating Father's Parental Rights

Father contends that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating his parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*.

In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

(A) one (1) of the following exists:
   (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

8

(ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). Specifically, Father claims that DCS failed to establish that the conditions that resulted in the Children's removal or the reasons for their placement outside of his care will not be remedied and that removal is in their best interests.

## A. Conditions Resulting in Removal Not Likely to be Remedied

In order to determine that the conditions will not be remedied, the juvenile court should first determine what conditions led DCS to place the Children outside of Father's care, and, second, whether there is a reasonable probability that those conditions will not be remedied. *In re S.P.H.*, 806 N.E.2d at 882. When assessing whether a reasonable probability exists that the conditions justifying a child's removal and continued placement outside her parent's care will not be remedied, the juvenile court must judge the parent's fitness to care

9

for his child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id*. A juvenile court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id*. (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)).

Here, the juvenile court's findings provide, and the record reveals, that the reasons for the Children's continued placement outside Father's care remain and are unlikely to be remedied. Father has never provided any more than minimal support for the children and, due to his disability and fixed income, does not appear to be able to do so. Father does not reside in his own residence and does not possess a ready means of transportation. Moreover, the record demonstrates that Father has a history of substance abuse and that he has failed to pursue possible remedies. Father tested positive for illegal drugs four times in 2010 and 2011 and refused a drug screen at the time of the termination hearing. Father has produced no evidence of compliance with AA, despite being referred to programs in Memphis. Father has maintained only sporadic and limited contact with the Children over the years, once going for three years without seeing them and visiting them only four times a year since

10

2010. Finally, Father acknowledges that the Children *cannot* be returned to his care due to his conviction for a sex crime. Even if the evidence indicated a willingness to parent the Children, "'[p]arental rights may be terminated when the parents are *unable* or unwilling to meet their parental responsibilities.'" *In re G.Y.*, 904 N.E.2d 1257, 1259-60 (Ind. 2009) (citation omitted and emphasis added).

When considered as a whole, we conclude that the evidence is sufficient to demonstrate a reasonable probability that the conditions which resulted in the Children's continued placement outside Father's care will not be remedied. Instead of challenging any of the above, Father relies on evidence that Olivia would be willing to care for the Children and that Minnesota essentially never gave her an opportunity to succeed. Father's claim effectively amounts to an invitation for this court to reweigh the evidence, which, again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879. As such, under these circumstances, we cannot say that the juvenile court erred in determining that DCS established that it is unlikely that the conditions resulting in the Children's placement outside of Father's care would be remedied. *See In re C.M.*, 675 N.E.2d 1134, 1140 (Ind. Ct. App. 1997).

## B. The Children's Best Interests

Next, we address Father's claim that DCS failed to prove by clear and convincing evidence that termination of his parental rights was in the Children's best interests. We are mindful that in determining what is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride*, 798 N.E.2d at 203. In doing so, the juvenile court must subordinate the interests of

11

the parent to those of the child involved. *Id.* Furthermore, this court has previously determined that the testimony of the case worker regarding the child's need for permanency supports a finding that termination is in the children's best interests. *Id.*; see also *Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

In concluding that the termination of Father's parental rights was in the Children's best interests, the juvenile court found as follows:

> In this case the [CASA] has concluded that termination of parental rights is in the children's best interests. The Mother has not completed services and has consented to their adoption. The Department is unable to place the children in the Father's care and efforts to secure relative placement have been unsuccessful. The children have negatively reacted to disruption in their placements in the past. They need to be secured in a safe, stable and permanent living arrangement. The continuation of experiments in alternatives to the termination of parental rights will continue the uncertainty of their lives without the promise of any early resolution. Through the termination of parental rights, the proposed adoption of the children may proceed and permanency can be secured. Accordingly, the Court concludes that the children's best interests are served by granting the petition to terminate the parent-child relationship.

Appellant's App. p. 34. Father claims that some of the State's evidence was misconstrued and some should not have been credited, and he reiterates his argument that potential placement with Olivia was improperly rejected without proper investigation.

Father acknowledges the juvenile court's finding that the predominant issue in the Children's therapy was anxiety resulting from foster care placement. Father argues that this anxiety affirms the importance of the parental relationship in the Children's lives. Father fails to acknowledge the Children's improvement since the placement, however. More importantly, Father's argument fails to acknowledge that removal from the care of a parent

and placement in foster care will almost always be very stressful for the child, even if there is no question that removal is in the child's best interests.

Both DCS Caseworker Kracium and CASA McIntosh testified that termination was in the Children's best interests. Kracium cited Father's minimal care for the Children after 2003 and his failure to provide clothing or support. Kracium noted Father's multiple drug screen failures and his failure to provide any evidence of compliance with rehabilitation programs. Kracium noted Father's presence on a sex offender registry and his multiple convictions for failing to properly maintain his registration. McIntosh cited Father's sporadic contact with the Children, Father's history of physical abuse directed at Mother, his positive drug screens, his failure to complete substance abuse treatment, and his inability to care for the Children on a daily basis. Father does not challenge Kracium's testimony or its sufficiency to establish that removal is in the Children's best interests but argues only that McIntosh's testimony should be discounted because it is only allegedly parroting Kracium's. And, for a final time, Father argues that the juvenile court ignored evidence that Olivia was willing to be considered for placement. Again, however, these are merely invitations to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

The juvenile court did not have to wait until the Children are irreversibly harmed such that their physical, mental, and social development was permanently impaired before terminating Father's parental rights. *See In re C.M.*, 675 N.E.2d at 1140. In light of the testimony of Kracium and McIntosh, considered with the reasonable concerns, in light of Father's habitual patterns of conduct, that Father will be unable to maintain his sobriety and

his admitted inability to even take custody of the children, we conclude that the evidence is sufficient to satisfy DCS's burden of proving that termination of Father's parental rights is in the Children's best interests.

Having concluded that the evidence was sufficient to prove the statutory requirements set forth in Indiana Code section 31-35-2-4(b)(2) by clear and convincing evidence, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.